*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOSEPH E. DECAMINADA and CAROL
DECAMINADA,

        Plaintiffs-Appellants,

v

BRUCE A. HAMMOND, JOYCE M. HAMMOND
and TIMBERS OF OAKLAND LAKE
ASSOCIATION,

        Defendants-Appellees.

UNPUBLISHED
February 18, 2020

No. 345847
Oakland Circuit Court
LC No. 2017-160702-CK

Before: MURRAY, C.J., and SWARTZLE and CAMERON, JJ.

PER CURIAM.

In this breach-of-contract action involving the rebuilding of a condominium home owned by defendants Bruce and Joyce Hammond, plaintiffs Joseph and Carol DeCaminada appeal as of right an order granting summary disposition in favor of defendants. We conclude that defendants did not breach the condominium community's governing documents and affirm.

## I. BACKGROUND

The Hammonds purchased a home in the Oakland Lake Association condominium community in 2002. In 2015, their home was destroyed by fire, and they decided to rebuild on the same condominium plot. The Hammonds received design approval for a new home from both the Association and township. The new home met the condominium community's original plans and specifications (e.g., the structure was located within the "building envelope" on their plot, it had the appropriate number of bedrooms, etc.), although it was larger than the first home and about 30 feet closer to the DeCaminadas' home next door. The DeCaminadas also claimed that the Hammonds' new landscaping included large rocks and a staircase located too close to the property line separating the plots. The Hammonds did not seek written approval from the Association prior to installing the landscaping, although they did receive such approval after the fact.

The DeCaminadas sued defendants, claiming breach of the condominium community's governing documents. Relevant here, Article V of the community's Bylaws addresses the

reconstruction or repair of units and provides: "If any part of the Condominium Premises shall be damaged, the determination of whether or not it shall be reconstructed or repaired" will be made by the owner, who shall "restore his unit and the improvements thereon to a clean and sightly condition satisfactory to the Association and in accordance with the provisions of Article VI." Section 5.2 further provides: "Any such reconstruction or repair shall be substantially in accordance with the Master Deed and the original plans and specifications for any damaged improvements located within the Unit unless the Co-owners shall unanimously decide otherwise." Article VI sets forth various restrictions and states in relevant part: "No co-owner shall make alterations, modifications or changes in any of the units or common elements, limited or general, without the express written approval of the [Association's] board of directors." Article VI requires similar approval for landscaping.

The Bylaws are attached to the community's Master Deed. Section 7.2 of the Master Deed sets out various specifications for the properties in the community, including sizes, appropriate home styles, and prohibited sidings. Section 7.2(b) of the Master Deed requires that a home constructed in the community must be approved by the original developer (or the Association as successor-in-interest) and the local township.

In pursuing their claims, the DeCaminadas contend that, under Section 5.2 of the Bylaws, the Hammonds were required to take one of two actions when rebuilding: (1) the Hammonds could build substantially the same home as the one that was destroyed; or (2) they could build something different, but only if they received unanimous consent of the other condominium community owners. The DeCaminadas maintain that the Hammonds' second (the replacement) home is not in substantial accordance with the plans and specifications of the first home, and it is undisputed that the Hammonds did not seek or receive consent from all of the other owners. The DeCaminadas similarly take issue with the Hammonds' new landscaping. Accordingly, the DeCaminadas argue that defendants have violated the community's governing documents.

Defendants respond that the DeCaminadas are misreading the governing documents. They argue, instead, that the Hammonds were required (and did) rebuild in substantial accordance with the Master Deed and the community's original plans and specifications. The Hammonds sought and received the only consent that they needed, i.e., from the Association and the township, and they were not required to get consent from all of the other owners, including the DeCaminadas. Finally, they argue that there was no breach of the Master Deed or Bylaws with regard to the Hammonds' new landscaping.

On motions for summary disposition under MCR 2.116(C)(10), the trial court granted disposition in favor of defendants. Plaintiffs now appeal.

## II. ANALYSIS

### A. STANDARD OF REVIEW

We review de novo a trial court's grant or denial of a motion for summary disposition. *Ormsby v Capital Welding, Inc*, 471 Mich 45, 52; 684 NW2d 320 (2004). When doing so, we consider the record evidence submitted by the parties in the light most favorable to the nonmoving party. *Rose v Nat'l Auction Group,* 466 Mich 453, 461; 646 NW2d 455 (2002). Summary

disposition is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

The DeCaminadas' lawsuit alleges breaches of contract. To demonstrate a breach of contract, a plaintiff must demonstrate "the existence and terms of a contract, that the defendant breached its terms, and that the breach caused damages to the plaintiff." *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 554; 904 NW2d 192 (2017). The Condominium Act, MCL 559.101 *et seq.*, provides that the "administration of a condominium project is governed by the condominium bylaws" attached to the master deed, along with the subdivision plan. MCL 559.103(9); MCL 559.108; MCL 559.153; see *Tuscany Grove Ass'n v Peraino*, 311 Mich App 389, 393; 875 NW2d 234 (2015). The governing documents determine the rights of the community's owners and "are interpreted according to the rules governing the interpretation of a contract." MCL 559.103(9); *Tuscany Grove Ass'n*, 311 Mich App at 393.

## B. REBUILD OF THE HOME

The DeCaminadas first argue that the Hammonds committed a breach of contract when they rebuilt their home by violating Section 5.2 of the Bylaws. On appeal, the DeCaminadas argue that they are not seeking to have the home torn down and rebuilt in a different location, but they do contend that parts of the structure should be rebuilt so as to conform more closely to the original home's footprint.

The goal of contract interpretation "is to determine and enforce the parties' intent on the basis of the plain language of the contract itself." *AFSCME v Detroit*, 267 Mich App 255, 261-262; 704 NW2d 712 (2005). The words of a contract "are interpreted according to their plain and ordinary meaning," and this Court "gives effect to every word, phrase, and clause" while avoiding "interpretations that would render any part of the document surplusage or nugatory." *Tuscany Grove Ass'n*, 311 Mich App at 393. It is for the courts to determine, as a question of law, the meaning of a contact where the language is clear and unambiguous. *AFSCME*, 267 Mich App at 262. Ultimately, this Court enforces clear and unambiguous language as written. *Tuscany Grove Ass'n*, 311 Mich App at 393. "A provision in a contract is ambiguous if it irreconcilably conflicts with another provision, or when it is equally susceptible to more than a single meaning." *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 715; 706 NW2d 426 (2005).

The DeCaminadas argue that a plain reading of Section 5.2 requires that, absent unanimous approval from all of the condominium owners, the Hammonds' second (rebuilt) home had to be substantially in accordance with the Master Deed and the plans and specifications of the Hammonds' first home. Defendants contend that the rebuilt home simply had to be substantially in accordance with the Master Deed and the community's original plans and specifications.

As noted, Section 5.2 provides: "Any such reconstruction or repair shall be substantially in accordance with the Master Deed and the original plans and specifications for any damaged improvements located within the Unit unless the Co- owners shall unanimously decide otherwise." Read in isolation, the provision could bear either interpretation. But, when interpreting a contract, a term or phrase cannot be construed in isolation, but must instead be construed in context and in light of the contract as a whole. See *Auto-Owners Ins Co v Seils*, 310 Mich App 132, 148; 871 NW2d 530 (2015). Read in context, defendants have the better position.

That defendants have the better position is most clearly shown by considering other portions of the governing documents. For example, similar to Section 5.2 of the Bylaws, Section 7.2(b) of the Master Deed describes "plans and specifications." These "plans and specifications" are those that were originally created by the developer. These can be found in various places, including Section 7.2(c) of the Master Deed, which requires that, for example, homes have square-footage restrictions and have a maximum of four bedrooms. Additional plans and specifications can be found in the community's subdivision plan, which sets out the property lines of the various private plots and common areas, as well as the building envelopes within each private plot (i.e., areas within a particular plot's property lines where a structure can be built). It is undisputed that the Hammonds' second home satisfies the community's original plans and specifications.

Moreover, defendants' reading makes sense when considering the purpose of the condominium community as a whole. When deciding whether to purchase a unit and join the condominium community, a prospective owner could look to the community's governing documents and determine whether the plans and specifications of homes set forth in those documents match the prospective owner's expectations. If the prospective owner became an actual owner, then presumably that owner agreed with the plans and specifications set forth in those documents, and that owner's reasonable expectations were based on the community's governing documents. If a home was subsequently destroyed by fire and the affected owner rebuilds, as long as the rebuilt home satisfied the plans and specifications set forth in the governing documents, the community's original purpose and the co-owners' reasonable expectations based on that purpose were preserved.

Finally, the DeCaminadas' reading would require that an owner be treated differently depending on whether that owner was building for the first or second time. To illustrate, assume that the Hammonds had built their second home first—i.e., when their plot was initially developed, the second home was the one actually constructed. In that case, the Hammonds would not have needed approval from all of the co-owners. Instead, because it fit within the community's original plans and specifications, the Hammonds would have only needed approval of the developer (or Association) and the township. But, under the DeCaminadas' reading, the Hammonds needed unanimous approval of the co-owners to build their second home, even though they would not have needed such approval had they built the second home first. Nothing in the governing documents supports this strained interpretation of Section 5.2.

Contractual language cannot be read in isolation, but must, instead, be read in context. When read in context, Section 5.2 is not equally susceptible to different meanings and, therefore, it is not ambiguous. Under the better reading, the Bylaws do not require that the Hammonds had to obtain unanimous approval from the community's other co-owners to rebuild their home. This determination is fatal to the DeCaminadas' first claim of breach of contract, and summary disposition in favor of defendants is appropriate.

## C. LANDSCAPING

For their second claim, the DeCaminadas argue that the Hammonds breached the Bylaws when they installed new landscaping because they did so before first obtaining the Association's written approval. The Bylaws do not, however, require *prior* written approval for landscaping, and the record confirms that the Association approved in writing the Hammonds' landscaping after

it was installed. There is nothing in the record to show that the landscaping encroaches on the DeCaminadas' property or otherwise violates the Master Deed or Bylaws. Moreover, as the trial court ruled, the DeCaminadas failed to identify any damages resulting from the asserted breach of contract. As for the Association, the DeCaminadas did not allege that it breached a specific provision of the Bylaws or Master Deed with respect to the landscaping. Accordingly, for the reasons more fully set forth by the trial court on this issue, summary disposition is appropriate with respect to the landscaping as well.

Affirmed. Defendants, having prevailed in full, may tax costs under MCR 7.219(F).


/s/ Christopher M. Murray
/s/ Brock A. Swartzle
/s/ Thomas C. Cameron