# STATE OF MICHIGAN

# COURT OF APPEALS

TUSCANY GROVE ASSOCIATION,

          Plaintiff-Appellant,

v

KIMBERLY PERAINO,

          Defendant-Appellee.

FOR PUBLICATION
July 14, 2015
9:10 a.m.

No. 320685
Macomb Circuit Court
LC No. 2012-003166-CH

Before: HOEKSTRA, P.J., and JANSEN and METER, JJ.

PER CURIAM.

In this dispute relating to the enforcement of condominium bylaws, plaintiff appeals as of right the trial court's order granting summary disposition to defendant based on the determination that plaintiff lacked authority to initiate the present action. Because plaintiff failed to obtain approval from a supermajority of co-owners before filing suit in violation of the plain language of the bylaws and plaintiff's efforts to obtain approval after the fact failed to comply with the voting formalities set forth in the bylaws, we affirm.

Tuscany Grove Condominium ("Tuscany Grove") is a condominium complex established in Shelby Township, Michigan in 2001 under the Michigan Condominium Act, MCL 559.101, *et seq*; and the Tuscany Grove Association, which has responsibility for administration and management of the condominium complex, is incorporated as a nonprofit corporation under the Michigan Nonprofit Corporation Act, MCL 450.2201, *et seq*. Defendant owns one of the condominium units in Tuscany Grove. Plaintiff filed the present lawsuit against defendant in an effort to compel defendant's compliance with certain fencing-related restrictions contained within the condominium bylaws. However, the trial court granted defendant's motion for summary disposition because plaintiff lacked authority to initiate the present suit. In particular, the trial court concluded that plaintiff itself violated the condominium bylaws by failing to obtain the requisite approval of a supermajority of owners before incurring legal expenses involved with litigation. Plaintiff now appeals as of right.

At issue on appeal is the application of a provision in the condominium bylaws requiring plaintiff to obtain approval from 66-2/3% of co-owners before incurring any legal expenses incident to litigation. Plaintiff disputes the applicability of this provision on appeal. In particular, plaintiff contends that, as a matter of contract interpretation, application of this clause leads to absurd results when the bylaws are considered as a whole and that, in these

-1-

circumstances, the provision should not be applied. In addition, plaintiff contends that the clause is void because it impermissibly conflicts with the Michigan Condominium Act and the Michigan Nonprofit Corporation Act. Finally, plaintiff argues that the trial court should not have granted defendant's motion for summary disposition because plaintiff complied with the supermajority requirement, albeit after filing suit, by obtaining the approval of 73.7% of owners by way of petitions. Given this approval from co-owners, plaintiff maintains it would be contrary to the statutory schemes as well as the bylaws themselves to prevent the co-owners from choosing to ratify the litigation against defendant. We disagree with each of these arguments.

On appeal, we review de novo a trial court's decision to grant a summary disposition motion. *Groves v Dep't of Corrections*, 295 Mich App 1, 4; 811 NW2d 563 (2011). Likewise issues involving statutory interpretation, as well as contract interpretation, present issues of law which are reviewed de novo. *Johnson v QFD, Inc*, 292 Mich App 359, 364; 807 NW2d 719 (2011).

Pursuant to the Michigan Condominium Act, the administration of a condominium project is governed by the condominium bylaws. MCL 559.153. Bylaws are attached to the master deed and, along with the other condominium documents, the bylaws dictate the rights and obligations of a co-owner in the condominium. See MCL 559.103(9), (10); MCL 559.108. Condominium bylaws are interpreted according to the rules governing the interpretation of a contract. See *Rossow v Brentwood Farms Dev, Inc*, 251 Mich App 652, 658; 651 NW2d 458 (2002). Accordingly, this Court begins by examining the language of the bylaws. *Wiggins v City of Burton*, 291 Mich App 532, 551; 805 NW2d 517 (2011). Words are interpreted according to their plain and ordinary meaning. *McCoig Materials, LLC v Galui Const, Inc*, 295 Mich App 684, 694; 818 NW2d 410 (2012). Further, this Court avoids interpretations that would render any part of the document surplusage or nugatory, and instead this Court gives effect to every word, phrase, and clause. *Id.* Ultimately, we enforce clear and unambiguous language as written. *Greenville Lafayette, LLC v Elgin State Bank*, 296 Mich App 284, 291; 818 NW2d 460 (2012).

In this case, the provision at issue states:

> (c) **Limitations on Assessments for Litigation**. The Board of Directors shall not have authority under this Article II, Section 2, or any other provision of these Bylaws or the Master Deed, to levy any assessment, *or to incur any expenses or legal fees with respect to any litigation, without the prior approval, by affirmative vote, of not less than 66-2/3% of all Co-owners in value and in number*. This section shall not apply to any litigation commenced by the Association to enforce collection of delinquent assessments pursuant to Article II, Section 6 of these Bylaws. In no event shall the Developer be liable for, nor shall any Unit owned by the Developer be subject to any lien for, any assessment levied to fund the cost of asserting any claim against Developer whether by arbitration, judicial proceeding, or otherwise. [Emphasis added.]

By its clear and unambiguous terms, this provision makes plain that the Association's Board of Directors lacks authority "to incur any expenses or legal fees with respect to any litigation" without first obtaining approval from a supermajority of co-owners. The only exception to this

rule is for cases involving "collection of delinquent assessments," which is not the underlying issue in the present lawsuit. By virtue of this provision, the Board of Directors was without authority to hire an attorney or incur any other expenses related to litigation against plaintiff aimed at enforcement of fencing restrictions. Given the legal expenses necessarily incident to litigation, the effect of this provision is to prevent the Board of Directors from filing suit without supermajority approval. Consequently, the trial court properly granted defendant's motion for summary disposition because plaintiff lacked authority to file suit.

In contesting the application of this provision, plaintiff does not dispute that the clause plainly prevents the Board of Directors from pursuing the present litigation against defendant. Instead, plaintiff argues that absurd results will arise if this provision is enforced because, for example, it will effectively prevent the Board of Directors from enforcing the bylaws, thereby essentially enabling a minority of owners to amend the bylaws by thwarting litigation aimed at enforcement. Contrary to these various arguments, there is nothing absurd about requiring approval before permitting the Board of Directors to incur potentially extensive legal expenses on behalf of the owners. Such a clause functions as nothing more than a reasonable effort to protect the owners' financial interests.[1] See *Port Liberte II Condo Ass'n, Inc v New Liberty Residential Urban Renewal Co, LLC*, 435 NJ Super 51, 65; 86 A3d 730 (2014). The Board of Directors may still exercise any of their other enforcement powers under the bylaws and may still file suit when appropriate, provided that they obtain approval to incur legal expenses. Indeed, if the supermajority prelitigation approval provision is unsatisfactory, the bylaws permit amendment and the co-owners thus remain free to amend the bylaws to their liking. Ultimately, parties are free to contract as they see fit, *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 51; 664 NW2d 776, 782 (2003), and there is simply no basis for this Court to rewrite the clear and unambiguous language of the bylaws. Enforced as written, the provision requires dismissal of plaintiff's lawsuit against defendant because the Board of Directors lacked authority to incur the expenses necessary to pursue this litigation. Thus, the trial court properly granted defendant's motion for summary disposition.

Aside from the assertion that application of the supermajority provision would lead to absurd results, plaintiff argues that it cannot be enforced because it conflicts with the Michigan Nonprofit Corporation Act and the Michigan Condominium Act. First, regarding the Nonprofit Corporation Act, as noted, the Association has been organized as a nonprofit corporation under MCL 450.2101 *et seq*. As a nonprofit corporation, under MCL 450.2261, the Association

---

[1] Plaintiff emphasizes that pursuant to MCL 559.206(b) an association may recover litigation costs from a co-owner when the association succeeds in litigation against the co-owner. While this is true, it is obviously only true if the association prevails in the litigation, meaning it is by no means certain that litigation against a co-owner will be cost-free. Any litigation involves a certain amount of risk and the by-law provision at issue in this case simply allows co-owners a voice in deciding when the financial risks of litigation should be assumed.

generally has the power to sue and be sued in the same manner as an individual. In particular, at all times relevant to the present dispute,[2] MCL 450.2261 stated:

> (1) A corporation, subject to any limitation provided in this act, in any other statute of this state, in its articles of incorporation, or otherwise by law, has the power in furtherance of its corporate purposes to do any of the following:
>
> ***
>
> (b) Sue and be sued in all courts and participate in actions and proceedings judicial, administrative, arbitrative, or otherwise, in the same manner as a natural person.

Given this provision, plaintiff now claims that any limitation on its power to sue must be contained in the Association's Articles of Incorporation and that, therefore, the supermajority prelitigation provision in the condominium bylaws is not enforceable.

This argument is without merit in light of the plain statutory language. In particular, the statute obviously envisions the possibility of limitations on a corporation's power to sue and it specifies that such limitations may be imposed in the corporation's articles of incorporation, by another statute of this state, or "otherwise by law." MCL 450.2261(1)(b). Further, from the statute's plain language, it is clear that a corporation's ability to sue may only be exercised in "furtherance of its corporate purposes." MCL 450.2261(1).

In this case, as plaintiff notes, the Articles of Incorporation do not expressly place any limits on the Association's ability to sue. However, the supermajority provision is nonetheless enforceable because it is clear that the Articles of Incorporation mandate enforcement of the condominium bylaws and failure to enforce the voting requirement would be contrary to the Association's corporate purposes. In particular, in relevant part, the Association's Articles of Incorporation provide that the purposes for which the corporation is formed, include:

> (i) To enforce the provisions of the Master Deed and Bylaws of the Condominium and of these Articles of Incorporation and such Bylaws and Rules and Regulations of this corporation as may hereinafter be adopted;
>
> (j) To do anything required of or permitted to it as administrator of said Condominium by the Condominium Master Deed or Bylaws or by Act No. 59 of Public Acts of 1978, as amended[.]

---

[2] MCL 450.2261(1)(b) has been recently amended, effective January 15, 2015. The parties do not, however, address this amendment on appeal. Nor do they address whether the amendment should apply retroactively. Given that there has been no argument for the application of the newer version of the statute, we thus consider the former version of the statute without making a determination regarding the new statute's retroactive or prospective effect.

From these purposes it appears plain that limitations on the power to sue expressed in the condominium bylaws are enforceable under the corporate Articles of Incorporation because the Association's corporate purpose is to "enforce" the bylaws and do those things "permitted to it" by the bylaws. Indeed, given these express purposes, allowing the Association to sue without requiring the supermajority approval demanded in the bylaws would be contrary to the Association's obligation to enforce the bylaws, and thus not "in furtherance" of the Association's corporate purposes as required by MCL 450.2261(1)(b). In sum, the supermajority requirement is a permissible limitation on the Association's power to sue and it does not impermissibly conflict with MCL 450.2261(1)(b).

Turning to consideration of the Michigan Condominium Act, plaintiff argues that any limitation on its authority to sue a co-owner for violation of the bylaws directly conflicts with MCL 559.206(a). This provision states:

> A default by a co-owner shall entitle the association of co-owners to the following relief:
>
> (a) Failure to comply with any of the terms or provisions of the condominium documents, shall be grounds for relief, which may include without limitations, an action to recover sums due for damages, injunctive relief, foreclosure of lien if default in payment of assessment, or any combination thereof. [MCL 559.206(a).]

Contrary to plaintiff's arguments, while this provision recognizes that an association might pursue an action for damages or injunctive relief against a co-owner, it does not prohibit co-owners from choosing to limit this authority to instances in which a supermajority of owners deem the litigation worth pursuing. That is, the statute mandates that an owner's failure to comply with condominium documents "shall be grounds for relief," but it does not dictate under what circumstances an association must pursue that relief. For example, the statute does not *require* the Association to pursue relief, it does not specify who should make the determination to pursue such litigation, and it certainly does not prohibit the adoption of a supermajority requirement designed to protect owners from the potentially expensive risks involved with litigation.[3] To the contrary, elsewhere the Michigan Condominium Act specifies that the

---

[3] Further, while MCL 559.206(a) includes the language "without limitations," it does so in reference to the relief available, not in reference to an association's authority to pursue such relief. In other words, the types of relief identified in the statute are meant to serve an illustrative, inclusive purpose, rather than to represent an exhaustive list of the relief available to an association. Indeed, the statute goes on to provide that relief may also include "other reasonable remedies the condominium documents may provide including but without limitation," fines or late fees. MCL 559.206(c). In no way does the statute suggest that a condominium association enjoys an unlimited, unconditional authority to sue its owners. Such an interpretation would be ridiculous given that every litigant faces limits in litigation including, for example, statutes of limitations, pleading requirements, rules of evidence, etc. Instead, the "without

-5-

"administration of a condominium project shall be governed by bylaws," MCL 559.153, and the bylaws may contain any provision "deemed appropriate for the administration of the condominium project not inconsistent with this act or any other applicable law." MCL 559.156(a). A rule specifying who should have the authority to make a decision to pursue litigation is clearly a matter relating to the administration of the condominium project such that it is properly regulated by the bylaws without causing a conflict with MCL 559.206(a).

Finally, plaintiff asserts that the trial court should not have granted defendant's motion for summary disposition because plaintiff complied with the supermajority requirement by obtaining the approval of 73.7% of owners by way of petitions.[4] In effect, plaintiff suggests that its belated efforts to seek approval should serve as a ratification of the Board of Directors decision to file suit, and plaintiff argues it would be contrary to the statutory schemes as well as the bylaws themselves to prevent the co-owners from choosing to ratify the litigation against defendant.

As a general principle, when an actor exceeds his or her authority, his or her actions may be ratified after the fact. See *David v Serges*, 373 Mich 442, 444; 129 NW2d 882 (1964). "Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." *Id.* (citation omitted). To ratify an act, the acts must be such that it might have been legally authorized in the first instance. See *Barrow v Detroit Election Comm*, 305 Mich App 649, 675; 854 NW2d 489 (2014). "If formalities are required for the authorization of an act, the same formalities are required for ratification." Restatement (Third) Of Agency § 4.01 (2006), comment e.

In this case, the prelitigation voting provision in the bylaws requires "approval, by affirmative *vote*, of not less than 66-2/3% of all Co-owners in value and in number." Typically, as discussed in Article VIII of the condominium bylaws, the bylaws envision voting at a meeting at which a quorum of co-owners is present. Action may be taken outside a meeting, provided that it occurs as set forth in Article IX, Section 8 of the bylaws, which states:

> **Action Without Meeting.** Any action which may be taken at a meeting of the members (except for the election or removal of Directors) may be taken without a meeting by written ballot of the members. Ballots shall be solicited in the same manner as provided in Section 5 for the giving of notice of meetings of members. Such solicitations shall specify (a) the number of Reponses needed to meet the

---

limitations" language is properly read in reference to the relief available which may include, but is not limited to, actions for damages, injunctive relief, etc.

[4] On appeal, defendant contests plaintiff's assertion that it obtained approving petitions from 73.7% of owners. However, plaintiff provided the trial court with an affidavit from the property manager for Tuscany Grove to support this assertion. Given that this is a motion for summary disposition, this documentary evidence must be viewed in a light most favorable to plaintiff. See *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996); MCR 2.116(G)(5). Viewed in this light, contrary to defendant's arguments, there is support for plaintiff's claim that it belatedly obtained petitions from a supermajority of co-owners approving the litigation.

quorum requirements; (b) the percentage of approvals necessary to approve the action; and (c) the time by which ballots must be received in order to be counted. The form of written ballot shall afford an opportunity to specify a choice between approval and disapproval of each matter and shall provide that, where the member specifies a choice, the vote shall be cast in accordance therewith. Approval by written ballot shall be constituted by receipt within the time period specified in the solicitation of (i) a number of ballots which equals or exceeds the quorum which would be required if the action were taken at a meeting; and (ii) a number of approval which equals or exceeds the number of votes which would be required for approval if the action were taken at a meeting at which the total number of votes cast was the same as the total number of ballots cast.

Considering these requirements for action outside of a meeting, the petitions collected by the Association did not serve to ratify the litigation against defendant because the petitions did not satisfy the formalities necessary to authorize litigation through an affirmative vote. In particular, there was no meeting in this case and, contrary to the requirements for taking action without a meeting, the petitions circulated in this case did not indicate: "(a) the number of Reponses needed to meet the quorum requirements; (b) the percentage of approvals necessary to approve the action; and (c) the time by which ballots must be received in order to be counted." Further, the petition simply had a space for owners to sign their name in approval, it was not a ballot which afforded owners "an opportunity to specify a choice between approval and disapproval of each matter," and the petition did not state that "where the member specifies a choice, the vote shall be cast in accordance therewith." Moreover, there is no indication regarding how the petitions were circulated or whether the method of soliciting the petitions complied with Section 5.

In sum, plaintiff failed to comply with the formalities necessary to obtain an affirmative vote as required by the prelitigation supermajority requirement. Because plaintiff failed to comply with these formalities, the belated petitions were not sufficient to ratify the litigation against defendant. See Restatement (Third) Of Agency § 4.01 (2006), comment e. Thus, because plaintiff lacked authority to pursue this litigation, the trial court properly granted defendant's motion for summary disposition.[5]

---

[5] In the alternative, defendant argues for the first time on appeal that collateral estoppel should control resolution of this case because plaintiff was a party to another lawsuit against another co-owner in which the exact same supermajority prelitigation requirement was interpreted to prevent plaintiff from pursuing litigation without supermajority approval. See *Tuscany Grove Association v Gasperoni*, unpublished per curiam opinion of the Michigan Court of Appeals, issued June 24, 2014 (Docket No. 314663). However, *Gasperoni* was not decided by this Court until after the trial court decided the present case, meaning that there was no final decision in place at the time summary disposition was granted, as required to invoke collateral estoppel. See *Leahy v Orion Twp*, 269 Mich App 527, 530; 711 NW2d 438 (2006). Indeed, defendant failed to raise the issue of collateral estoppel in the trial court, and by failing to include collateral estoppel and supporting facts in her first responsive pleading, defendant waived this affirmative defense.

Affirmed.

/s/ Joel P. Hoekstra
/s/ Kathleen Jansen
/s/ Patrick M. Meter

---

See MCR 2.111(F)(3); *Harris v Vernier*, 242 Mich App 306, 312; 617 NW2d 764 (2000). In short, given plaintiff's failure to raise this argument below, we decline to decide the present case on the basis of collateral estoppel.