*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HICKORY ISLAND COMPANY,

      Plaintiff-Appellant,

v

ROBERT COLEMAN and VIRGINIA COLEMAN,

      Defendants-Appellees,

and

DEREK THIEL,

      Defendant.

UNPUBLISHED
March 2, 2023

No. 360848
Wayne Circuit Court
LC No. 20-016049-CZ

Before: RICK, P.J., and M. J. KELLY and RIORDAN, JJ.

PER CURIAM.

Plaintiff, Hickory Island Company (HICO), appeals by right the trial court order granting defendants Robert and Virginia Coleman summary disposition under MCR 2.116(I)(2). For the reasons stated in this opinion, we affirm the trial court's order summarily dismissing HICO's claim that the Colemans violated the bylaws by storing their boat overnight in their boat hoist and its claim that the boat hoist is a nuisance per se because it violates the Township of Grosse Ile's zoning ordinances. However, because there is a question of fact as to whether the work on the boat hoist constituted an expansion or modification of the hoist's width, we reverse and remand for entry of an order denying summary disposition of that claim.

## I. BASIC FACTS

The Colemans own property on Hickory Island, which is part of an archipelago that makes up the City of Grosse Ile. Since 1904, Hickory Island has been governed by HICO, which regulates the manner by which the residents of Hickory Island may use their property. The regulations, which are set forth in HICO's bylaws, include a prohibition on the installation of boat hoists. There is an exception to the prohibition, however. Specifically, Article X, § 4 provides:

. . . Furthermore, no construction of any kind; porches, above ground decks or patios, boat houses, davits or hoists, may be built in front of the building line (except docks which are governed by Section 8 below). PROVIDED, further, that nothing in this rule shall prevent maintenance, or repair of any structure now standing within such building line.

\* \* \*

Any existing davits or hoists that were constructed with Board approval may be repaired but may not be replaced, modified, or expanded.

In 1987, the Colemans applied for and received an exception for the construction of a boat hoist to replace one that had been damaged in a storm. The approval shows that the hoist was to be 6 feet wide and 8 feet, 6 inches long. The proposed height of the hoist was not indicated; however, notes on the approval indicated that the hoist was "to be low profile—dock level" and "lift to level of dock." The 1987 drawings show that the hoist extended above the dock level and that it would be motorized. According to the Colemans, they stored their boat on the hoist "day and night" from approximately Memorial Day to Labor Day every year since 1987. However, due to rising water levels, in the winter of 2019, the motor controlling the boat hoist was destroyed by ice and water.

On June 27, 2020, the Colemans hired Grosse Ile Marine Works to inspect the motor and repair the hoist. Grosse Ile Marine Works advised them that "because of rising water levels it was best to relocate the motor to above the boat dock, as this would prevent future water damage." Initially, the Colemans did not obtain a work permit from the City of Grosse Ile, nor did they seek HICO's approval to have the work performed. On July 23, 2020, the Colemans' neighbor sent an e-mail to HICO advising that the Colemans were having work done on their hoist. Subsequently, HICO sent multiple cease-and-desist notices, warning that the work violated HICO's bylaws. The Colemans, in response, indicated they were only repairing the hoist, which was permitted under the bylaws. The Colemans also submitted a building-permit application to the Township of Grosse Ile for the work on the hoist. The Township issued the building permit in August 2020.

After the work on the hoist was completed, the Colemans' neighbor e-mailed before and after photographs to HICO. She asserted that the hoist had been modified and expanded by the addition of two large motors on the top of the vertical supports and that the supports were twice as high as before. She also opined that the Colemans had "raised the bed of the lift significantly." Thereafter, on December 10, 2020, HICO filed a complaint against the Colemans, alleging that the Colemans had breached the bylaws by failing to request written approval from HICO's Board of Directors prior to making additions and changes to their boat hoist and by modifying and expanding their boat hoist.[1] HICO also alleged that the alterations and changes to the boat hoist violated Grosse Ile Township Ordinance, § 285.20.6(A), so the changes constituted a nuisance per se. HICO filed its first amended complaint on February 22, 2021, adding a count for injunctive

---

[1] HICO also brought a claim against defendant Derek Thiel, in his capacity as the Director for the Township of Grosse Ile's Department of Public Services and Community Development. Thiel was dismissed without prejudice.

relief.  Thereafter, HICO filed a second amended complaint, alleging that the Colemans were docking their boat on the hoist overnight in violation of the bylaws.

On October 15, 2021, HICO moved for summary disposition under MCR 2.116(C)(9) and (C)(10), arguing that it was entitled to judgment as a matter of law because the undisputed facts showed that Colemans had docked their boat overnight in violation of the bylaws, that the work done on the hoist was a modification and alteration that violated the bylaws, and that the hoist was a nonconforming use that had been abandoned and then enlarged such that it was in violation of the Township's zoning ordinances and constituted a nuisance per se.  In response, the Colemans asserted that although they stored their boat overnight on the hoist, Article X, § 9 of the bylaws only prohibited overnight "docking" and did not prohibit the overnight use of a boat hoist.  They argued that the bylaws permitted them to make repairs to their boat hoist, and asserted that the work done was merely a repair, not a modification or improvement that would have required Board approval.  Finally, they argued that their hoist was not a nonconforming use because they had received a special exception for it.  On March 21, 2022, the trial court granted the Colemans summary disposition under MCR 2.116(I)(2).  This appeal follows.

## II.  SUMMARY DISPOSITION

### A.  STANDARD OF REVIEW

HICO argues that the trial court erred by granting summary disposition.  We review de novo a trial court's decision on a motion for summary disposition.  *Barnard Mfg Co, Inc v Gates Performance Engineering*, *Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009).  "A circuit court properly grants summary disposition to the opposing party under MCR 2.116(I)(2) if the court determines that the opposing party, rather than the moving party, is entitled to judgment as a matter of law."  *Connell v Lima Twp*, 336 Mich App 263, 281; 970 NW2d 354 (2021).  Bylaws adopted by an entity are interpreted according to the rules governing the interpretation of a contract.  *Tuscany Grove Ass'n v Peraino*, 311 Mich App 389, 393; 875 NW2d 234 (2015).  Questions involving the interpretation of bylaws are, therefore, reviewed de novo.  *Id*.

### B.  ANALYSIS

### 1.  OVERNIGHT USE

Because the parties do not dispute the material facts on this issue, the only question is which party is entitled to judgment as a matter of law.  We interpret bylaws using the rules governing the interpretation of a contract.  *Tuscany Grove Ass'n*, 311 Mich App at 393.  Our analysis beings with the language of the bylaws, and the words "are interpreted according to their plain and ordinary meaning."  *Id*.  When interpreting bylaws, "this Court avoids interpretations that would render any part of the document surplusage or nugatory, and instead this Court gives effect to every word, phrase, and clause."  *Id*.  Clear and unambiguous language is enforced as it is written.  *Id*.

Article X, § 9 of the bylaws provide:

Boats can be docked during the day, but no overnight docking is permitted.  A guest slip is available to the HIYC for overnight stays.  (Bylaws, Article X, § 9).

-3-

The term "docking" is not defined. In relevant part, *Merriam-Webster's Collegiate Dictionary* (11th ed) define "dock" as "1 : to haul or guide into or alongside a dock . . . . 3 : to come into or alongside a dock." In contrast, "hoist" is defined in relevant part as "1 : an act of hoisting : LIFT." *Merriam-Webster's Collegiate Dictionary* (11th ed).

HICO asserts that a boat stored overnight in a hoist is "docked" in violation of the bylaws. First, HICO asserts that "dock" means "to haul or guide into or alongside a dock" or "to come into or alongside a dock." Next, it notes that the Colemans' boat hoist is alongside their dock. HICO posits that a boat stored in a hoist, therefore, is alongside a dock and is, in fact, docked within the meaning of the bylaws. HICO states that the act of securing a boat is referred to as "mooring," which can be accomplished by using cables, anchors, or lines; as a result, when in a hoist, the Colemans' boat is, therefore, moored. And, because the hoist is fixed in place alongside the dock, the boat moored in the hoist is somehow docked within the meaning of the bylaws.

Yet, HICO's argument related to the mooring of a boat is not relevant to the interpretation of the bylaws. The bylaws do not use the term "moored." They refer to "docking" and "docked." Next, contrary to HICO's suggestion, the boat hoist is not docked. It is a mechanical device that is affixed to support beams that appear to be connected to the dock. The mere fact that it is alongside the dock does not make it docked. And, even if it did, the bylaws prohibit the docking of boats, not the docking of boat hoists. Moreover, when a boat is placed in the hoist and lifted from the water, it is not brought alongside the dock. Rather, it is hoisted, i.e., lifted from the water. The parties do not dispute that the purpose of a hoist is to keep a boat out of the water to avoid damage to the boat's hull. Thus, a boat in a hoist is hoisted, not docked. Because the Colemans' storage of their boat in a hoist is not the equivalent of docking the boat, it is not prohibited by the bylaws. The trial court did not err by summarily dismissing this aspect of HICO's claim.

## 2. REPAIR, MODIFICATION, OR EXPANSION

HICO next argues that the work on the hoist was more than a repair. The gravamen of this argument is that the hoist was expanded by the repairs, which is prohibited by Article X, § 4 of the bylaws. The relevant language provides:

> Any existing davits or hoists that were constructed with Board approval may be repaired but may not be replaced, modified, or expanded.

The bylaws do not define the terms "repair" or "expand," so this Court can consider dictionary definitions. See *Johnson v Pastoriza*, 491 Mich 417, 436; 818 NW2d 279 (2012).

"Repair" is defined in relevant part as "1 a : to restore by replacing a part or putting together what is torn or broken: FIX." *Merriam-Webster's Collegiate Dictionary* (11th ed). In this case, it is undisputed that the hoist was not replaced. Rather, one part of the hoist—the motor—was damaged. In order to repair the hoist, the motor had to be replaced. The replacement of the motor, therefore, resulted in the hoist being repaired. That is the hoist was restored to working condition by replacing the damaged part. Accordingly, under the plain language of the bylaws, the boat hoist was repaired when the Colemans replaced the broken motor with new motors.

HICO directs this Court to unrefuted evidence that the I-beams supporting the boat hoist were enlarged. However, the fact that, in order to effectuate the repair, the I-beams were raised approximately 32 inches does not transform that repair into a modification or expansion of *the hoist*. The 1987 approval indicates that the I-beams existed prior to the hoist being installed. In other words, the I-beams are not part of the boat hoist. The replacement, modification, or expansion of the I-beams, therefore, is not prohibited by Article X, § 4. HICO has presented no evidence that the I-beams should be considered to be part of the hoist as opposed to the pre-existing support upon which the 1987 hoist was built. Consequently, the expansion of the I-beams is not prohibited by the bylaws, nor does it constitute an expansion or modification of the boat hoist.

HICO notes that the motors for the hoist are now on the top of the hoist instead of the bottom. As a result of that change, they suggest that the height of the hoist was increased. In support, they direct this Court to the before and after photographs taken by the Colemans' neighbor. The photographs, however, present a factual question as to whether the height has been increased. They are taken from different angles and it is unclear whether the distance between the photographer and the hoist was the same for both photographs. Moreover, although placing the motors atop the hoist necessarily increases the hoist's height when measured from the dock to the top of the hoist, the prohibition is in Article X, § 4 is that the *hoist* cannot be expanded. To "expand" means "2 : to increase the extent, number, volume, or scope of : ENLARGE." *Merriam-Webster's Collegiate Dictionary* (11th ed). In order to determine whether the height of the hoist was increased, the question is not whether the height from the dock to the top of the hoist was increased. Instead, it is a question of whether the height of the hoist—from its bottom to its top— was increased. That is, if a motor of the same approximate size was moved from the bottom to the top of the hoist, the overall height of the hoist would essentially be the same. The record is devoid of any evidence as to the height of the hoist prior to the motors being moved to the top of the hoist. Thus, there is no factual support for the assertion that the height of the hoist has been increased. Indeed, the 1987 approval for the hoist did not include any vertical height measurements. Instead, it only included specifications for the width and length of the hoist and a general indication that the hoist was to be "low profile." As a result, HICO is not entitled to summary disposition on the basis that the motors constitute a vertical expansion of the hoist.

HICO also asserts that the hoist is now wider. If the hoist is wider, that would constitute an expansion of the hoist, which, under Article X, § 4 of the bylaws, is prohibited. In support, HICO directs this Court to the measurements in drawings prepared by Manfred Egerer, a member of HICO's Board who inspected the hoist on June 16, 2021. Egerer averred that he measured the hoist and that his drawings reflect his measurements. Relevant to this argument, his drawings indicate that the width of the hoist is 92 inches wide, i.e., approximately 7.6 feet wide. The 1987 approval, however, indicated that the hoist's width was to be six feet. The Colemans contend that the reason for the difference is because Egerer measured from a different point, and they aver in their affidavits that the hoist is the same width now as when it was installed in 1987. In light of that conflicting evidence, we conclude that there is a factual dispute regarding whether the width of the hoist has been expanded. Because there is a genuine question of material fact as to whether the hoist's width was expanded, the trial court erred by granting summary disposition on the issue

of whether the Colemans' violated Article X, § 4 of the bylaws. Remand for further proceedings is, therefore, required.[2]

## 3. NUISANCE PER SE

The use of land in violation of a zoning ordinance is a nuisance per se. MCL 125.3407; *Soupal v Shady View, Inc*, 469 Mich 458, 465; 672 NW2d 171 (2003). The Colemans' property is zone R-1-F, and it is subject to the Township of Grosse Ile's zoning ordinances. Grosse Ile Township Ordinance, § 285.17.4(A)(1)(b) provides that lifting devices, including boat hoists, "shall be prohibited in the R-1-F District."

HICO contends that the trial court erred by determining that the Coleman's boat hoist was not considered to be a nonconforming structure under the Township's zoning ordinances. The zoning ordinances define a nonconforming accessory structure as:

> An accessory structure or portion thereof lawfully existing at the effective date of this chapter, or amendments thereto, that does not conform to the provisions of this chapter in the district in which it is located. (Example: an accessory deck which does not meet current setback standards.) [Grosse Ile Township Ordinance, § 285-18.3.]

It is undisputed that the Colemans' boat hoist existed prior to the effective date of the zoning ordinances. However, under Grosse Ile Township Ordinance, § 285-18.4(H), "[a]ny use for which a special exception, variance or special land use permit has been granted as provided in this chapter shall not be deemed a nonconformity."

On August 26, 1987, the Township of Grosse Ile's zoning officer sent a letter to the Colemans advising them that that they had to take specific actions before a building permit for their boat hoist would be issued. Specifically, the letter stated that the Colemans had to make an application for a public hearing and review by the Township hearing officer; that they had to supply six copies of the drawings to show the location of the dock and hoist, with the dimensions to the side property lines shown; and that they had to pay a filing fee. Thereafter, on September 25, 1987, the application was approved. Given that the Township of Grosse Ile issued a building permit for the structure in 1987, the boat hoist is not nonconforming under Grosse Ile Township Ordinance, § 285-18.4(H). Because the hoist is not nonconforming, the trial court did not err by summarily dismissing HICO's nuisance claim.

---

[2] We note that the trial court found that the changes to the hoist were de minimis and concluded that, as a result, they were more akin to repairs than modifications or expansions of the existing hoist. However, the bylaws do not provide that minor modifications or expansions should be treated as repairs. Rather, only repairs are permitted. All modifications and expansions, regardless of how minor or significant, are prohibited. In any event, an increase of approximately 20 inches in the width of the hoist is not de minimis.

Nevertheless, HICO asserts that because the relevant zoning ordinances did not exist in 1987, no special exception, variance, or special land use permit could have been granted "as provided in this chapter." See Grosse Ile Township Ordinance, § 285-18.4(H). The procedure required under Chapter 285, however, was followed. Specifically, Grosse Ile Township Ordinance, § 285-20.3 provides that "[a] building permit shall be required prior to the . . . repair . . . of any building or structure regulated by the Building Code." In turn, Grosse Ile Township Ordinance, § 285-20.3(B)(1) provides that "[n] building permit shall be issued for the . . . alteration or use of any building or structure or part thereof regulated by the Building Code, . . . which is not in total compliance with the Township of Grosse Ile Building Code or this chapter or other applicable ordinance of the Township of Grosse Ile." Here, in response to the Colemans' application for a building permit to repair the hoist, the Township issued a building permit in August 2020. Under the ordinances, such a permit could only be issued if the work was "in total compliance" with the relevant zoning provisions. Accordingly, on this record, the Colemans did, in fact, receive approval for the installation in 1987 and for the repairs in 2020.[3] The trial court, therefore, did not err by summarily dismissing the nuisance per se claim.

## III. CONCLUSION

We affirm the trial court's dismissal of HICO's claim that the Colemans docked their boat overnight in violation of Article X, § 9 and HICO's claim that the boat hoist is a nuisance per se. However, because there is a genuine issue of material fact, we reverse the court's order summarily dismissing HICO's claim that the Colemans expanded the width of the boat hoist in violation of Article X, § 4 of the bylaws.

Affirmed in part and reversed in part and remanded for further proceedings. We do not retain jurisdiction. No taxable costs are awarded, neither party having prevailed in full. MCR 7.219(A).

/s/ Michelle M. Rick
/s/ Michael J. Kelly
/s/ Michael J. Riordan

---

[3] Although HICO may believe that the building permit was issued in violation of the relevant ordinances, that would be a claim against the Township, not against the Colemans. The claim against the Township, however, has been dismissed.