*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LESLIE WALSH,

Plaintiff-Appellant,

v

HAWTHORN HILLS OWNERS OF ROCHESTER, INC., doing business as HAWTHORN HILLS HOMEOWNERS ASSOCIATION,

Defendant-Appellee.

UNPUBLISHED
June 22, 2023

No. 361768
Oakland Circuit Court
LC No. 2021-191216-CH

Before: MARKEY, P.J., and JANSEN and K. F. KELLY, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order denying his motion for summary disposition under MCR 2.116(C)(10) and granting summary disposition in favor of defendant. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises from a dispute regarding defendant's authority to implement a street lighting project in the Hawthorn Hills community governed by the association. The association is comprised of over 350 members, including plaintiff. In December 2017, defendant emailed the residents of the community outlining a proposal to increase the association's annual dues. The e-mail stated the increased dues would provide funding for several projects, including "DTE installed street lights placed throughout [the] neighborhood." In January 2018, defendant sent a follow-up letter to residents discussing the proposed annual dues increase and the projects they would fund. The letter stated defendant would install "street lights throughout the neighborhood . . . . This would add the elements of accent lighting, safety, and security throughout our neighborhood." In May 2018, 190 out of 324 votes (59%) were cast in favor to increase the annual dues to $350. Plaintiff voted in favor of the increase.

After the increase in annual dues was passed, defendant sent several newsletters to the residents regarding the status of the street lighting project. The street lighting project was also discussed at the association's 2020 annual meeting and was approved as part of the association's

-1-

budget for that fiscal year. The street lighting project did not require residents to financially contribute to the project besides payment of their annual dues.

In June 2021, plaintiff emailed defendant and expressed concern with the street lighting project. Plaintiff then filed a complaint in November 2021 alleging that defendant failed to adhere to its bylaws by implementing the street lighting project without the approval of a $^2/_3$ vote of the association's members, as required by Section 4.02 of the bylaws. Plaintiff requested the court enter a declaratory judgment ordering that defendant follow the terms of its bylaws. Additionally, plaintiff alleged defendant breached its fiduciary duty to its members for failing to adhere to the bylaws.

In January 2022, plaintiff moved for summary disposition and argued he was entitled to summary disposition under MCR 2.116(C)(10) because there was no question of fact regarding whether the street lighting project was a special assessment that required approval by $^2/_3$ of the association's members. The trial court disagreed, concluding the street lighting project was "general and reoccurring in nature." Therefore, the project was "rightfully . . . identified by the defendant as being pursued under Section 4.01" (which allows defendant to use the annual budget to fund expenditures that are general and reoccurring). The court, therefore, denied plaintiff's motion and entered summary disposition in favor of defendant under MCR 2.116(I)(2).[1] This appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). When considering a motion under MCR 2.116(C)(10), "a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. at 160. Only when there is no genuine issue of material fact may the motion be granted. *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted). Further, "[a] court may grant summary disposition to the opposing party under MCR 2.116(I)(2) if it determines that the opposing party, rather than the moving party, is entitled to judgment." *Cove Creek Condo Ass'n v Vistal Land & Home Dev, LLC*, 330 Mich App 679, 696; 950 NW2d 502 (2019).

Additionally, "[w]hen validly promulgated, an entity's bylaws or similar governing instrument will constitute a binding contractual agreement between the entity and its members." *Conlin v Upton*, 313 Mich App 243, 255; 881 NW2d 511 (2015). Housing association bylaws are "interpreted according to the rules governing the interpretation of a contract." *Tuscany Grove Ass'n v Peraino*, 311 Mich App 389, 393; 875 NW2d 234 (2015).

---

[1] We note that, on appeal, plaintiff argues the trial court erred when it determined that plaintiff's claims were moot. However, plaintiff has misstated the trial court's ruling on mootness. In its May 27, 2022 order, the trial court stated it "found that the Plaintiff's claims were not moot based on Plaintiff's argument that a trail improvement project is currently pending."

## III. ANALYSIS

On appeal, plaintiff argues the trial court erred because there is no genuine issue of fact regarding whether the street lighting project was a special assessment requiring a $^2/_3$ approval vote by members of the association. We disagree.

Defendant's authority to maintain and improve the subdivision community originates from its Declaration of Restrictions ("DOR") and its bylaws. The DOR was created in November 1978, and provides for the establishment of a "maintenance fund." This fund is derived from the annual dues paid by each member of the association. The DOR provides:

> The Maintenance Fund shall be used for such of the following purposes as the Association shall, from time to time, determine as necessary and advisable for improving and maintaining the Common Area and any other property of the Association:
>
> > Roadways and entryways of the development; for planting trees and shrubbery and the care thereof, for the maintenance of storm retention basins on Common Areas (including the removal of silt and debris therefore, and the control of harmful algae and erosion); for expenses incident [to] the construction, operation and maintenance of swimming pools, tennis courts, or similar creational facilities located within the Common Area; for collecting and disposing of garbage, ashes and rubbish; for employing night watchmen; for caring for vacant property including the mowing of vacant lots within the subdivisions irrespective of the ownership thereof; for removing grass or weeds; for construction, purchasing, maintaining or operating any community services; snow removal on the public streets; for doing any other thing necessary or advisable in the opinion of the Association for the general welfare of the members; for expenses incident to the examination of plans, onsite inspections, and the endorsement of these restrictions or any other building restrictions applicable to said properties or for any other purposes for which the Association is incorporated.

Additionally, the DOR originally required an annual fee of $75 per member; however, this amount could be increased if "not less than fifty-one percent" of the members of the association vote to raise the fee.

Defendant is also governed by its bylaws. Notably, the bylaws explicitly state that "[i]n the event of any conflict arising between these By-Laws and the Declaration of Restrictions for Hawthorn Hills, as amended, the terms of such Declaration of Restrictions shall be deemed to be controlling." Section 4.01 of the bylaws allows defendant to use the annual budget (comprised of the members' annual dues) to fund "all anticipated expenditures of a general and reoccurring nature." In contrast, Section 4.02 of the bylaws states:

Items of expenditure of the Association which are not general and reoccurring in nature shall not be included in the annual budget of the Association, but rather shall be deemed to be items of special assessment, and accordingly shall be submitted in writing by the Board of Directors of the Association to all members of the Association and the same shall be subject to the written approval of two-thirds (2/3) of the members of the Association eligible to vote. The ballot with respect to any such special assessment shall . . . clearly recite the purpose of the proposed special assessment, the entire cost of the project involved, the cost per-membership in the Association, financing arrangements, if any, [and] the date by which such special assessment must be paid . . . ."

We conclude the street lighting project was of a nature considered under the DOR. The DOR allows defendant to use the general maintenance fund (comprised of the members' annual dues) for "improving and maintaining the Common Area and any other property of the Association." The DOR lists several examples of development projects defendant would have authority to implement, including building swimming pools, constructing and operating community services, or "doing any other thing necessary or advisable in the opinion of the Association for the general welfare of the members." Under the terms of the DOR, constructing and operating new streetlights throughout the subdivision community is within the discretionary authority contemplated by the DOR. Like a swimming pool, the streetlights would require expenditures for both a one-time construction and ongoing operation and maintenance. Streetlights are also a service to the subdivision community that would support the "general welfare" of its residents by improving the usability and safety of the streets.

In addition to the street lighting project being permitted under the DOR, defendant was also permitted to use the general maintenance fund to implement the project under Section 4.01 of the association's bylaws so long as the project is of a general and reoccurring nature. Plaintiff argues the street lighting project was not general and reoccurring; therefore, the project, under Section 4.02, required the approval of $^2/_3$ of the association's members.

Under the plain language of the bylaws, the street lighting project was both general and reoccurring. Thus, defendant was not required to get a $^2/_3$ approval for the project. While the bylaws do not specifically define these terms, "the fact that a contract does not define a relevant term does not render the contract ambiguous." *Terrien v Zwit*, 467 Mich 56, 76; 648 NW2d 602 (2002). "If a term is not defined in a contract, we will interpret such term in accordance with its commonly used meaning." *Id*. at 76-77 (quotation marks and citation omitted). The common meanings of terms may be derived from dictionary definitions. See *id*. at 63-64. "General" is commonly defined as "involving, applicable to, or affecting the whole." *Merriam-Webster's Collegiate Dictionary* (11th ed). "Reoccurring" is commonly defined as "to occur again" or "to happen another time." *Merriam-Webster's Collegiate Dictionary* (11th ed). We conclude the expenditure for street lighting in a residential neighborhood is a general project because streetlights are a common staple within a community and affect the whole community. The streetlights will presumably be used every night, and thus, are not of a temporary or seasonal nature. Additionally, the upkeep and operation of the streetlights will be a reoccurring expense for defendant.

Further, we construe Section 4.02 as governing instances where residents are asked to contribute *additional* funds outside of their annual dues to fund the specific project. Section 4.02

outlines the ballot process and requires defendant to include the "cost per-membership" each resident would have to contribute and the date by which the residents must pay the special assessment fee if approved by the members. There is no evidence that residents were asked to pay any additional fees outside of their annual dues for the street lighting project. Therefore, because the expenditure for the project is general and reoccurring, and because the residents of the community were not asked to contribute additional funds outside of their annual dues to finance the project, we conclude there is no question of fact regarding whether the street lighting project is not a special assessment.

Additionally, while plaintiff attempts to provide evidence on appeal to establish the actual cost of the project in support of his argument that the high cost inherently makes the project a special assessment, plaintiff did not provide this evidence to the trial court. Moreover, the project was included in the proposal for increasing annual resident dues, which was supported by more than 51% of residents, including plaintiff himself. Residents were first notified of the project in December 2017 and were well-informed of the street lighting project during the vote to increase the annual dues in 2018 and during the 2020 annual association meeting.

In sum, considering all the evidence before the lower court, the trial court did not err when it granted summary judgment in favor of defendant under MCR 2.116(I)(2) because there is no question of fact concerning whether defendant had authority to implement the street lighting project and whether the project was not a special assessment.

Affirmed. Defendant, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Jane E. Markey
/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly