*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID L. POWERS,

        Plaintiff/Counterdefendant-Appellant,

v

MARK C. BONE, MICHELLE L. BONE, SCOTT
A. DECIUS, CRISTINA DECIUS, and ALBERT
KEHREN MOONEY, JR.,

        Defendants/Counterplaintiffs-
        Appellees.

UNPUBLISHED
February 11, 2025
9:11 AM

No. 367748
Emmet Circuit Court
LC No. 2022-107655-CH

Before: BORRELLO, P.J., and REDFORD and PATEL, JJ.

PER CURIAM.

In this action regarding defendants' alleged violations of condominium bylaws, plaintiff appeals as of right the circuit court's order granting summary disposition to defendants pursuant to MCR 2.116(C)(10) (no genuine issue of material fact). For the reasons set forth in this opinion, we vacate in part and affirm in part.

## I. BACKGROUND

Plaintiff and defendants collectively possess or have possessed condominium units within the same building of the Hideaway Valley development. Plaintiff owns Unit 50, while the Decius defendants own Unit 52. The Bone defendants were the original owners of Unit 53; however, in May 2022, defendant Mooney acquired ownership of Unit 53. All condominiums within this development are governed by the condominium bylaws, which state, in pertinent part:

> a. No Co-owner shall make alterations in exterior appearance or make structural modifications to his condominium unit (including interior walls through or in which there exist easements for support or utilities) or make changes in any of the common elements, limited or general, without the express written approval of the Board of Directors including (but not by way of limitation) exterior painting or the erection of antennas, lights, aerials, awnings, doors, shutters or other exterior attachments or modifications, nor shall any co-owner damage or make

-1-

modifications or attachments to common element walls between units which in any way impairs sound-conditioning provisions. The Board of Directors may approve only such modifications that do not impair the soundness, safety, utility or appearance of the Condominium.

b. A co-owner shall be permitted to enlarge the main floor deck, which is a Limited Common Element appurtenant to his condominium unit, subject to the following conditions:

i. Plans and specifications for any enlarged deck must be approved in writing by the Board of Directors prior to construction.

ii. Any enlarged deck shall reasonably conform with existing decks on adjoining units and the architecture and appearance of the project in general.

iii. No deck on units 1 through 42 shall extend in width more than eight (8) feet, six (6) inches measured from the outside of the building. End units shall not extend the deck beyond eight (8) feet, four (4) inches from the existing side of the building.

iv. No deck on units 43 through 72 shall extend in width more than thirteen (13) feet, six (6) inches measured from the outside of the building at the door wall. End units shall not extend the deck beyond eight (8) feet, four (4) inches from the existing side of the building.

The deed additionally provided an anti-waiver clause:

The failure of the Association or of any co-owner to enforce any right, provision, covenant or condition which may be granted by the Condominium Documents shall not constitute a waiver of the right of the Association or of any such co-owner to enforce such right, provisions, covenant or condition in the future.

As of 2021, four decks in the development exceeded the 13.5-foot limit established in the bylaws.

In 2021, defendants Decius and Bone sought to enhance their shared deck, planning an expansion to approximately 19 feet from the door wall. To execute this project, they engaged a contractor and directed him to refer to existing deck extensions as a guideline. Construction commenced on September 1, 2021; however, on September 7, the Hideaway Valley Condominium Association (HVCA) issued a stop-work order due to non-compliance of the deck with the HVCA bylaws. Angela Berry, the HVCA manager, advised defendant Scott Decius about the order and informed him that the deck extension would be a topic of discussion at an upcoming HVCA board meeting.

On September 25, 2021, the HVCA board convened its annual meeting, during which it distributed a ballot containing two resolutions that did not pertain to deck-size limitations. Subsequently, an additional vote was conducted regarding a resolution to permit deck extensions

of up to 19 feet, which was approved. Following this, defendants proceeded with their deck extension and successfully completed the project by the end of 2021.

In January 2022, plaintiff visited his condominium and observed defendants' nonconforming deck. He contacted the HVCA board to address the deck issue and the resolution from September 2021. Plaintiff asserted that the resolution was invalid as it failed to adhere to the procedural requirements outlined in the bylaws and because he did not receive notification of a resolution aimed at amending the Master Deed. The procedure for amending the bylaws is detailed as follows:

> Except as expressly limited in Section 5 of this Article VIII, these Bylaws may be amended by the Association at any regular annual meeting or a special meeting called for such purpose, by an affirmative vote of not less than sixty-six and two-thirds (66-2/3%) percent of all Co-owners in number and in value.

The HVCA board conducted a second vote on the resolution in May 2022. Although the resolution garnered a majority of favorable votes, it required 45 votes to pass, and only 34 co-owners voted in support. On May 5, 2022, plaintiff initiated legal action against the Deciuses and Bones, seeking an injunction from the court to compel restoration of the deck to its original condition. Subsequently, on June 22, 2022, plaintiff filed an amended complaint, naming Mooney as an additional defendant. The amended complaint introduced three new counts: one seeking a court order for the Deciuses to remove kayaks stored under their deck, another requesting the restoration of grass damaged due to the deck's construction, and a claim for nominal damages against the Bones.

Defendants asserted that plaintiff's claims concerning the decks were barred by laches, equitable estoppel, unclean hands, public policy, and failure to join all necessary parties. They denied making any changes or modifications to the exterior wall by hanging kayaks and asserted that the Deciuses replanted grass following the deck's construction. Furthermore, defendants contended that the Bones had undertaken a complete renovation of their unit and had not benefited from the deck extension.

The trial court granted summary disposition in favor of defendants, deciding that the doctrine of laches applied because plaintiff failed to attend the annual meeting held in September 2021. Furthermore, the trial court concluded that defendants' reliance on statements made by HVCA officials regarding the approval of the deck further justified granting summary disposition. Additionally, the trial court granted defendants' motion for summary disposition concerning the kayaks, grass, and nominal damages against the Bones.

This appeal followed.

## II. ANALYSIS

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Mapp v Progressive Ins. Co.*, 346 Mich App 575, 584; 13 NW3d 643 (2023). Because defendants' motion for summary disposition was granted pursuant to MCR 2.116(C)(10), this Court must consider all evidence in the light most favorable to plaintiff as the party opposing the motion. *Id.* This Court interprets condominium bylaws according to the rules of contract interpretation; issues

involving contract interpretation are reviewed de novo. *Tuscany Grove Ass'n v Peraino*, 311 Mich App 389, 393; 875 NW2d 234 (2015).

"A trial court properly grants summary disposition under Subrule (C)(10) when the proffered evidence fails to establish a genuine question of fact." *Tripp v Baker*, 346 Mich App 257, 262; 12 NW3d 45 (2023) (quotation marks and citation omitted). The party moving for summary disposition pursuant to subrule (C)(10) "has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence." *Id*. (quotation marks and citation omitted). "The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists;" the opposing party "must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Id*. (quotation marks and citation omitted). The court should grant the motion if, viewing the record in the light most favorable to the nonmoving party, it finds there is no material factual dispute. *Id*.; *Dep't of Environment, Great Lakes, and Energy v Holloo Farms, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365934); slip op at 5.

## A. LACHES

In his appeal, plaintiff argues that the legal doctrine of laches should not bar his claim from being heard, as he acted with reasonable diligence in pursuing his case. Additionally, he contends that the anti-waiver clause in the condominium bylaws indicates that nonconforming decks—likely other similar structures within the condominium that fail to meet specific standards—should not affect the validity of his claim.

## 1. UNREASONABLE DELAY

Laches is an affirmative defense a defendant may use when it would be inequitable to grant relief to a plaintiff because of the plaintiff's delay in bringing the action. *Bayberry Group, Inc v Crystal Beach Condo Ass'n*, 334 Mich App 385, 410; 964 NW2d 846 (2020). In an equity action, a court may refuse a plaintiff relief if the plaintiff is not reasonably diligent in bringing the action. *Id*. "Although timing is important, laches is not triggered by the passage of time alone; rather, it is the prejudice occasioned by the delay that justifies application of the doctrine to bar a claim." *Id*. The burden is on the defendant to prove that they were prejudiced by plaintiff's lack of diligence. *Id*.

In support of their argument concerning laches, defendants asserted that plaintiff should have been aware of other nonconforming decks but failed to take action against their owners. However, plaintiff testified that he was unaware of any other nonconforming decks within the development prior to initiating his lawsuit. Furthermore, plaintiff indicated that defendants did not inform him of their intentions to expand the deck before the commencement of construction. Although the trial court appropriately accepted plaintiff's testimony as credible when ruling on the motion for summary disposition, the court nonetheless concluded that plaintiff was not reasonably diligent in exercising his rights due to his absence from the annual meeting held on September 25, 2021. However, the records do not demonstrate that plaintiff would have been aware that the defendants' deck extension would be addressed as an agenda item at the annual meeting. The topic was discussed during a board meeting on September 10, and this discussion was documented in the meeting minutes, albeit without extensive detail. The emails sent prior to the September 25

annual meeting did not address the deck or various deck sizes whatsoever. This record establishes, at a minimum, a genuine issue of fact regarding whether plaintiff would have realized the necessity of attending the annual meeting to object to defendants' proposed deck extension. Consequently, the court erred in granting defendants' motion for summary disposition based on a finding that plaintiff's failure to attend the meeting constituted unreasonable delay.

## 2. WAIVER

The trial court also erred by dismissing plaintiff's claim based on the failure of the HVCA board to enforce the deck-size restriction. The trial court's reasoning was incorrect because the HVCA bylaws contain an anti-waiver provision, which means that the board's inaction should not invalidate plaintiff's claim. An anti-waiver provision typically safeguards a party's rights even if another party neglects to enforce a restriction or rule, indicating that plaintiff can uphold his claim regardless of the board's actions or, in this case, inactions.

The anti-waiver provision of the condominium bylaws states:

The failure of the Association or of any co-owner to enforce any right, provision, covenant or condition which may be granted by the Condominium Documents shall not constitute a waiver of the right of the Association or of any such co-owner to enforce such right, provisions, covenant or condition in the future.

Thus, a co-owner who chooses not to enforce a covenant against another co-owner retains the right to do so in the future. This holds true even if the HVCA board does not take any action to enforce the covenant. Essentially, the decision by one co-owner to delay or abstain from enforcement does not waive their ability to pursue enforcement later, regardless of the HVCA board's inaction.

In the trial court's decision, the term "waiver" was notably absent from its reasoning related to the enforcement of a clause concerning deck sizes. Nevertheless, the court ruled that enforcing the restriction against defendants would be unjust, especially since the HVCA board had allowed four other decks that did not conform to this restriction. This situation directly contradicts the anti-waiver clause included in the bylaws. Therefore, plaintiff is correct in asserting that, considering the bylaws' anti-waiver clause, the court made an error by approving defendants' motion for summary disposition based on this reasoning.

## B. KAYAKS

Plaintiff additionally contends that the trial court erred by granting summary disposition in favor of defendants concerning the kayaks. This argument is based on the claim that the condominium bylaws explicitly prohibit any alterations to the exterior of a condominium unit.

As discussed *supra*, when interpreting condominium bylaws this Court applies principles of contract interpretation. *Tuscany Grove Ass'n*, 311 Mich App at 393. This Court gives words their plain and ordinary meaning in doing so. *Id*. "Further, this Court avoids interpretations that would render any part of the document surplusage or nugatory, and instead this Court gives effect to every word, phrase, and clause." *Id*.

-5-

The provision plaintiff asserts as prohibiting defendants' kayak storage is as follows:

No co-owner shall make alterations in exterior appearance or make structural modifications to his apartment (including interior walls through or in which there exist easements for support or utilities) or make changes in any of the common elements, limited or general, without the express written approval of the Board of Directors including (but not by way of limitation) exterior painting or the erection of antennas, lights, aerials, awnings, doors, shutters or other exterior attachments or modifications, nor shall any co-owner damage or make modification or attachments to common element walls between units which in any way impairs sound conditioning provisions. The Board of Directors may approve only such modifications as do not impair the soundness, safety, utility or appearance of the Condominium.

The principle of *ejusdem generis* states that, "when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." Black's Law Dictionary, 12th ed. While this principle is more commonly associated with statutory interpretation, this Court may also apply it to interpret contracts—including condominium bylaws—when the language is unclear. See, *Home-Owners Ins Co v Andriacchi*, 320 Mich App 52, 63; 903 NW2d 197 (2017). Likewise, the principle of *noscitur a sociis* asserts that "the meaning of an unclear word or phrase, especially one in a list, should be determined by the words immediately surrounding it." Black's Law Dictionary, 12th ed.

The provision in question explicitly prohibits co-owners from undertaking any "alterations," "structural modifications," or "changes" without prior approval from the HVCA board. This indicates that the bylaw is designed to prevent co-owners from making alterations that could fundamentally change the condominium's original construction or add elements that would remain integral to the condominium. While the list of prohibited changes is nonexclusive, it provides examples such as "exterior painting, erection of antennas, lights, aerials, awnings, doors, and shutters," concluding with the phrase "other exterior attachments or modifications." All enumerated examples typically involve modifications intended to be permanent or, at the very least, semi-permanent installations.

Common sense leads us to conclude that a kayak is an object primarily utilized for recreational boating. It is not intended to serve as a long-term alteration, structural modification, or change to the building to which it may be affixed. The Deciuses' two kayaks are suspended under the deck, secured by straps. How the kayaks are affixed indicates they are designed to be easily removable and replaceable at the Deciuses' convenience. Consequently, the kayaks are distinctly different from the items cited as examples in the bylaw. Therefore, kayaks stored in the manner employed by the Deciuses do not fall within the purview of the bylaw, and the trial court correctly granted summary disposition on this matter in favor of defendants.

## C. GRASS

Plaintiff contends that the trial court erred by granting summary disposition in favor of defendants concerning the grass issue. Plaintiff asserts that adequate evidence was presented, demonstrating a legitimate dispute about whether defendants had appropriately restored the grass.

When a trial court decides a motion for summary disposition brought pursuant to MCR 2.116(C)(10), it considers "affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). The moving party is entitled to judgment if the evidence does not establish a genuine issue of material fact. *Id*.

Plaintiff argued in the trial court and in his appeal that defendants did not restore the grass located behind their respective units. To substantiate this assertion, plaintiff submitted an affidavit stating, "It appears to the Plaintiff that the grass has not been restored, or if it was, the replanting was not effective to survive winter," along with a photograph taken in May 2023, which depicted the damaged grass behind the defendants' deck. In contrast, defendants produced evidence demonstrating that they did restore the grass following the construction of the deck. This evidence included receipts from mid-2022 for grass seed and topsoil and a photograph from September 2022 showcasing seemingly healthy grass behind the deck. The evidence presented by plaintiff does not negate that of defendants concerning the restoration of the grass; rather, it merely illustrates that the grass was somehow damaged after defendants' restoration. Consequently, there exists no genuine dispute regarding defendants' restoration of the grass following the deck extension, and the trial court correctly granted summary disposition in favor of defendants.

## D. NOMINAL DAMAGES

Lastly, in his appeal, plaintiff contends that the trial court erred by dismissing his claim for nominal damages against the Bones.

"Nominal damages are those damages recoverable where plaintiff's rights have been violated by breach of contract or tortious injury, but no actual damages have been sustained or none can be proved." *4041-49 W Maple Condo Ass'n v Countrywide Home Loans, Inc*, 282 Mich App 452, 460; 768 NW2d 88 (2009) (quotation marks and citation omitted). "When validly promulgated, an entity's bylaws or similar governing instrument will constitute a binding contractual agreement between the entity and its members." *Conlin v Upton*, 313 Mich App 243, 255; 881 NW2d 511 (2015). The bylaws may also be considered a contract between the members themselves. *Id*. A co-owner in a condominium is entitled to recover damages in an action against another co-owner for violation of the bylaws. MCL 559.207.

Our review of the record leads us to conclude that the trial court erred in granting defendants' motion for summary disposition regarding the deck extension. This decision was flawed due to the presence of genuine issues of fact over whether plaintiff had received sufficient notice to voice objections to the defendants' plans prior to the deck's completion. Furthermore, plaintiff's claim for nominal damages hinges on the assertion that defendants' deck was built in violation of the condominium bylaws. Therefore, the trial court also made an error in granting the defendants' motion for summary disposition concerning the issue of nominal damages.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this

opinion.  We do not retain jurisdiction.  Neither party has prevailed in full; no costs are awarded. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ James Robert Redford
/s/ Sima G. Patel