*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

WOODSIDE MEADOWS CONDOMINIUM
ASSOCIATION,

        Plaintiff-Appellant/Cross-Appellee,

v

LEE CHARLES PARKER,

        Defendant-Appellee/Cross-Appellant,

and

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS,

        Defendant-Appellee.

UNPUBLISHED
February 12, 2025
9:59 AM

No. 364582
Washtenaw Circuit Court
LC No. 21-000091-CH

---

WOODSIDE MEADOWS CONDOMINIUM
ASSOCIATION,

        Plaintiff-Appellant/Cross-Appellee,

v

LEE CHARLES PARKER and ALICE PARKER,

        Defendants-Appellees/Cross-
          Appellants,

and

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS,

        Defendant.

No. 364583
Washtenaw Circuit Court
LC No. 21-000200-CH

---

-1-

Before: BORRELLO, P.J., and REDFORD and PATEL, JJ.

PER CURIAM.

This consolidated appeal[1] involves a suit for foreclosure and monetary damages brought by plaintiff, Woodside Meadows Condominium Association (the Association), against defendant, Lee Charles Parker, in Docket No. 364582 and against defendants, Lee Charles Parker and Alice Parker, in Docket No. 364583.[2] The Association appeals as of right the trial court's entry of a verdict of no cause of action following a bench trial. Defendants cross-appeal the trial court's denial of an award of treble damages for conversion under MCL 600.2919a and denial of sanctions for a frivolous claim under MCL 600.2591. We affirm in all respects in both dockets, except we reverse with respect to the order for Attorney Brooke Jordan to refund payments to defendants.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Association is a nonprofit corporation established under the Michigan Condominium Act, MCL 559.101 *et seq*., and governed by its Master Deed, bylaws, and other applicable Michigan law. The Association administers the affairs of Woodside Meadows Condominium, a condominium project located in Ann Arbor, Michigan. Before 2020, the Association retained the services of the Association subsidiary, Kramer-Triad Group (Kramer-Triad), to manage the condominium. In 2020, the Association retained F & D Property Management Company (F & D) to replace Kramer-Triad for management of the condominium.

The Parkers, a married couple, have co-owned Unit 148 in the Woodside Meadows Condominium since 2005. Parker alone has owned Unit 149 in the same condominium since 2006. These properties were purchased as investment properties to rent to tenants. The Parkers also owned two units in another property, the Blue Heron Condominium, which at one time was managed by Kramer-Triad. As condominium co-owners, the Parkers were obligated to pay assessments to the Association in monthly installments and pay special assessments imposed by the Association in accordance with the Master Deed and bylaws. The monthly installments were due on the first day of each month. After a ten-day grace period, the Association and Kramer-Triad charged a $25 late fee.

In 2021, the Association brought actions for foreclosure and monetary damages against defendants. At the time of the trial, the Association alleged defendants owed a total of $15,416 for unpaid monthly assessments, unpaid additional assessments, legal fees and costs, and interest for Unit 148. The Association also alleged that Parker owed a total of $20,164 for unpaid monthly

---

[1] *Woodside Meadows Condo Ass'n v Lee Charles Parker*, unpublished order of the Court of Appeals, entered January 27, 2023 (Docket Nos. 364582 and 364583).

[2] We refer to Lee Charles Parker by his surname. Alice Parker is a codefendant, but did not testify at the bench trial or actively participate in the proceedings. We use the plural "defendants" or "the Parkers" to refer to them collectively.

assessments, unpaid additional assessments, late charges, legal fees and costs, and interest for Unit 149. The Association alleged defendants were continually delinquent in their accounts and never resolved the arrearages since at least 2012. However, the Association did not take legal action until it filed suit in 2021, after F & D replaced Kramer-Triad. A bench trial was conducted in 2022.

At the bench trial, testimony was adduced that in 2008, the Parkers fell behind in their payment of assessments. The parties entered a settlement agreement to resolve the arrearages. According to the Association, defendants failed to abide by the terms of the settlement agreement to bring the accounts current. Kramer-Triad charged a $25 late fee to defendants, but did not notify them. Thereafter, defendants paid the regular assessment amount.

According to Matthew Gucker, an F & D representative who testified at trial, the late payment triggered the imposition of a new late fee every subsequent month in which defendants paid only the regular assessment amount. This caused defendants to incur a new late fee. The following month $25 was applied to the new late fee, $25 was applied to the previous short payment, and a new late fee was imposed. Consequently, defendants became further behind in the assessments and late fees every month, even if the subsequent payments were timely or paid within the grace period.

Plaintiff also alleged that defendants incurred new fines by paying assessments late and by failing to pay fines imposed for violations of bylaws. Defendants failed to provide copies of leases for the unit rentals. Defendants also were fined when their tenants modified the exterior of a condominium unit without approval, when tenants left trash bags outside of a bin for pickup, and when a tenant kept a barbecue grill on a balcony.

According to plaintiff, defendants were continually delinquent in their accounts and never resolved the arrearages. The Association presented ledgers of defendants' account histories dating back to August 2012 and a consolidated ledger in accordance with a six-year limitations period. Rita Khan, a representative from Kramer-Triad, testified regarding defendants' late fees, late payments, and violations. She admitted there was no record that defendants were notified of the increasing arrearages. Gucker testified that if defendants made all payments on time since 2012, they would have remained in delinquency because of the accumulating late fees. Defendants maintained that they did not realize this aspect of the Association's claim before they heard Gucker's explanation. Defense counsel elicited Gucker's tentative agreement that Kramer-Triad's practices in allowing the late fees to accumulate were "deceptive."

Parker testified that he and his coworker, Melissa Garner, reviewed his bank statements and composed a spreadsheet demonstrating that he made every payment on time. He testified that he paid his assessment amount by mailing an envelope containing checks for the payment of his Blue Heron accounts with the payments for the Woodside Meadows accounts. He always mailed the checks timely or within the grace period. However, he admitted that he chose to withhold payments in October and November 2020 after he learned he was in arrearages for thousands of dollars and wanted to ensure that his payments were properly credited.

In early 2021, after talking to the Association's counsel, Parker sent several checks totaling approximately $7,000 to plaintiff's counsel. He believed that he was paying the assessments he

owed for a new roof. He was not informed that the checks were applied to late fees. He testified that he learned at trial that the checks were allocated to attorney fees.

Following the bench trial, the trial court found that plaintiff's records were not trustworthy, and that its practices were "deceptive." The trial court found that Parker was a credible witness. The trial court ordered that defendants' accounts were deemed up-to-date and entered a judgment of no cause of action. The trial court ordered the Association's counsel to refund to defendants payments that Parker believed were correcting his arrearages, but were instead allocated as attorney fees plaintiff incurred in addressing defendants' delinquencies. The trial court denied defendants' request to require the Association to pay three times the amount of the refunded payments as treble damages for its counsel's alleged conversion of the attorney-fee payment under MCL 600.2919a. The trial court also denied defendant's requested imposition of sanctions against plaintiff for frivolous filing. This appeal followed.

## II. THE BYLAWS

Michigan's Condominium Act, among other things, governs the administration of a condominium project. *Tuscany Grove Ass'n v Peraino*, 311 Mich App 389, 393; 875 NW2d 234 (2015); MCL 559.153. "Bylaws are attached to the master deed and, along with the other condominium documents, the bylaws dictate the rights and obligations of a co-owner in the condominium." *Tuscany Grove Ass'n*, 311 Mich App at 393; MCL 559.103(9) and (10); MCL 559.108.

Relevant to this case, Article II of the condominium's bylaws permitted plaintiff to assess costs to maintain the common elements and to administer the property. Article II, § 3 provides that co-owners shall pay annual assessments in twelve monthly installments. Those installment payments are due on the first day of each month. If the installment remains unpaid following a ten-day grace period, a late charge in the amount of $25 will be assessed. All payments made applied first against late charges, attorney fees, interest and costs, and thereafter against assessments in order of oldest delinquency.

Article II, § 5 governs enforcement of the delinquent assessments. It provides, in pertinent part:

> The association may enforce collection of delinquent assessments by a suit at law for a money judgment or by foreclosure of the statutory lien that secures payment of assessments, or both in accordance with the Act. Pursuant to Section 139 of the Act, no Co-owner may assert in an answer or set-off to a complaint brought by the Association for nonpayment of assessments the fact that the Association or its agents have not provided services or management to the Co-owner.

> Each Co-owner, and every other person who from time to time has any interest in the Condominium, shall be deemed to have granted to the Association the unqualified right to elect to foreclose such lien either by judicial action or by advertisement . . . .

-4-

Notwithstanding the foregoing, a judicial foreclosure action shall not be commenced, nor shall any notice of foreclosure by advertisement be published, until the expiration of ten (10) days after mailing, by first class mail, postage prepaid, addressed to the delinquent Co-owner(s) at his/her or their last known address of a written notice that one or more installments of the annual assessment and/or a portion or all additional and/or a special assessment levied against the pertinent Unit is or are delinquent and that the Association may invoke any of its remedies hereunder if the default is not cured within ten (10) days after the date of mailing . . . .

This section further states that the co-owner in default is liable for the expenses in collecting unpaid assessments. Plaintiff reserved to itself "the right to declare all unpaid installments of the annual assessment for the applicable fiscal year (and for any future fiscal year in which said delinquency continues) and/or all unpaid portions or installments of the additional or special assessment, if applicable, immediately due and payable."

## III. PLAINTIFF'S CHALLENGE TO THE VERDICT

The Association argues the trial court's verdict was contrary to the evidence, including the unambiguous language of the condominium bylaws. The Association contends the trial court disregarded undisputed evidence of defendants' continuous arrearages and instead relied on irrelevant considerations and inadmissible evidence. Before addressing the trial court's ultimate conclusion, we address various arguments raised by the Association related to its challenge to the verdict, which we broadly categorize as claims of evidentiary error and credibility-determination errors. We conclude the Association is not entitled to relief.

## A. STANDARDS OF REVIEW

We review a trial court's decision to admit or exclude evidence for an abuse of discretion, but preliminary legal questions regarding the admissibility of evidence are reviewed de novo. *Nahshal v Fremont Ins Co*, 324 Mich App 696, 710; 922 NW2d 662 (2018). A trial court abuses its discretion when its decision is outside the range of reasonable and principled outcomes. *Id*.

We review a trial court's factual findings following a bench trial for clear error, but its conclusions of law are reviewed de novo. *Chelsea Investment Group, LLC v Chelsea*, 288 Mich App 239, 250; 792 NW2d 781 (2010). "A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made." *Id*. at 251. We defer to the trial court's superior ability to evaluate and weigh witnesses' credibility. *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 172; 848 NW2d 95 (2014).

This appeal and the cross-appeal concern the bylaws governing the Association. "Condominium bylaws are interpreted according to the rules governing the interpretation of a contract." *Tuscany Grove Ass'n*, 311 Mich App at 393. The interpretation of a contract presents an issue of law that we review de novo. *Id*. The language of the bylaws is interpreted according to its plain and ordinary meaning. *Id*. This Court "avoids interpretations that would render any part of the document surplusage or nugatory, and instead this Court gives effect to every word, phrase, and clause." *Id*. "Ultimately, we enforce clear and unambiguous language as written." *Id*.

B. ANALYSIS

The trial court entered a judgment of no cause of action after it provided the following conclusions of law:

> Plaintiff has the burden of proof that the propositions upon which they rely on are more probable than not. While they have filed voluminous pleadings, exhibits filling binders, objected to the consolidation of these two cases for purposes of judicial economy, this court is in the unique position of determining credibility. This court finds Mr. Parker to be credible. He appeared to be sincere and genuinely concerned about the accusations being made about him. He did not in any way appear to be the scofflaw Plaintiff attempts to portray him as. This court likewise found Plaintiff's agent, the subsequent property manager, credible. Even he seemed surprised by the accounting practices (or lack thereof) of the prior managers. This court does not find the prior managers testimony to be compelling. The records are not trustworthy, the practice of evolving and compounding late fees, the admission that one half of a late fee is kept by the management company, leave this finder of fact to conclude that the proposition that this lawsuit is premised on: substantial continuous arrearages over a decade, is not more probable than not.

First, the Association argues the trial court misapplied Gucker's testimony that Kramer-Triad's business practices were "deceptive." The Association argues Gucker was not qualified as an expert in property management policy, debt collection, or law and should not have been able to offer such testimony. We disagree.

Because Gucker was not qualified as an expert, the admissibility of his testimony is governed by MRE 701. Opinion testimony by a lay witness is permissible when the testimony is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or to the determination of a fact in issue." MRE 701.[3] The testimony of a lay witness must not be based in "scientific, technical, or other specialized knowledge" within the scope of MRE 702. An expert is "a witness qualified as an expert by knowledge, skill, experience, training, or education." MRE 702.

At trial, Gucker did not positively assert his opinion that Kramer-Triad's business practices were deceptive. Rather, he replied, "I guess so," in response to defense counsel's question whether he agreed that Kramer-Triad acted unfairly and deceptively in allowing late fees to accumulate. This testimony did not contain elements of scientific, technical, or specialized knowledge such that it was necessary for Gucker to be qualified as an expert. See MRE 702. Rather, he provided lay witness testimony related to his own perception of a company whose practices he was familiar with after his employer took over Kramer-Triad's contract with the Association. See MRE 701. The trial court was not required to qualify Gucker as an expert to consider his testimony.

---

[3] The Michigan Rules of Evidence were amended effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the rules in effect at the time of trial.

In its opinion following the trial, the trial court found Gucker credible and noted "[e]ven he seemed surprised by the accounting practices (or lack thereof) of the prior managers." The trial court did not indicate that it considered Gucker to be an expert under MRE 702 in its evaluation of the soundness and fairness of Kramer-Triad's business practices. Likewise, the trial court did not indicate that it relied on Gucker to evaluate the soundness and fairness of Kramer-Triad's business practices. Instead, the trial court merely noted Gucker's surprise at Kramer-Triad's business practices. Accordingly, the trial court did not "misapply" Gucker's testimony.

Second, the Association argues the trial court erroneously relied on Garner, who did not testify as an expert, could not testify about relevant facts, and created an Excel spreadsheet admitted at trial that relied on hearsay. The Association further argues the spreadsheet was inadmissible under MRE 803(6). We disagree that the trial court erroneously relied on Garner or inadmissible hearsay.

The trial court admitted a spreadsheet produced by Parker and Garner that compared Parker's bank records with the charges listed on the Association's ledgers. Garner also testified at trial regarding the process of constructing this spreadsheet. MRE 602 provides, in relevant part, that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Contrary to the Association's assertion, Garner did not testify regarding the contents of the spreadsheet. She testified about the process she and Parker used to compare his bank records with the charges listed on the ledgers. Garner had personal knowledge of the activities she and Parker conducted as they prepared the spreadsheet. The trial court did not abuse its discretion by permitting Garner's testimony.

We likewise find the Association's argument that the spreadsheet was inadmissible hearsay because it was not conducted in the regular course of defendants' business under MRE 803(6) without merit. " 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is generally inadmissible. MRE 802. MRE 803(6) is the business record exception to the exclusion of hearsay statements. MRE 803(6) provides:

> A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with a rule promulgated by the supreme court or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

The trial court did not abuse its discretion in permitting admission of the spreadsheet because the source of information in the spreadsheet or the method or circumstances of its preparation did not indicate a lack of trustworthiness. The spreadsheet consisted of a comparison

of the Association's ledgers, which plaintiff had admitted at trial, with defendants' bank records. The compilation of business records is permissible under MRE 803(6). The Association does not challenge its own ledgers or the bank records as improper under MRE 803(6). Accordingly, the trial court did not abuse its discretion in admitting the spreadsheet.

Third, the Association argues because their ledgers were business records admitted under MRE 803(6), the trial court was required to give them credence absent compelling circumstances. We disagree.

Although hearsay is generally inadmissible, MRE 802, plaintiff's ledgers were admitted under the hearsay exception for business records, MRE 803(6). The traditional premises underlying the business-records exception are "the presumed trustworthiness of both the source of information reported and the accuracy with which the information is recorded . . . ." *Solomon v Shuell*, 435 Mich 104, 116; 457 NW2d 669 (1990). In *Solomon*, our Supreme Court stated:

> We agree that the credibility and weight to be assigned to otherwise admissible evidence is a question for the trier of fact. We disagree, however, that, under MRE 803(6), trustworthiness is not also a question of admissibility. As the rule and theoretical underpinnings indicate, trustworthiness is, under MRE 803(6) . . . an express condition of admissibility. [*Solomon*, 435 Mich at 128.]

In its opinion, the trial court concluded that the Association's records, i.e., the ledger of defendants' accounts, were untrustworthy. Although trustworthiness is "an express condition of admissibility," it does not follow that once business records are deemed trustworthy, the trier of fact plays no further role in assessing their reliability. Accordingly, the trial court was not required to accept the veracity of the Association's ledgers because they were admissible under MRE 803(6).

Fourth, the Association argues evidence of defendants' timely payment history with Blue Heron was irrelevant. The Association argues it was not tasked with explaining why defendants may have been current with one account managed by Kramer-Triad but not the other. We disagree that the testimony regarding Blue Heron was irrelevant.

In its written opinion following the bench trial, the trial court noted that Kramer-Triad at one time managed condominium units owned by Parker at Woodside Meadows and Blue Heron. Parker would mail one envelope of his association fees to the management company for the Association's property and one envelope for his association fees at Blue Heron at the same time. The trial court found, "Inexplicitly, the prior management company, Plaintiff's agent, indicated he was never late on the other property (Blue Heron) but always late on Plaintiff's (Woodside)."

"Relevant evidence is evidence 'having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Hardwick v Auto Club Ins Ass'n*, 294 Mich App 651, 667; 819 NW2d 28 (2011), quoting MRE 401 (emphasis omitted). The Association is correct that it was not tasked with explaining why defendants were current with Blue Heron and not Woodside Meadows, but this does not mean the evidence was not relevant to the defense. Testimony regarding defendant's timeliness on his Blue Heron accounts was relevant because it corroborated Parker's

conscientiousness and assertion that he always paid the association fees within the grace period. This testimony made it less probable that defendant continuously made late payments on the Woodside Meadows account. Accordingly, the trial court appropriately considered this evidence.

Fifth, the Association argues the trial court erroneously made irrelevant credibility determinations when none of the witnesses' credibility were at issue under MRE 608. Specifically, the Association argues Parker's credibility was not relevant to the application of the bylaws to defendants' delinquency. The Association's argument misapprehends the trial court's role as the trier of fact.

In a bench trial, the weight of evidence and credibility of witnesses are to be determined by the trial court. *Wright v Wright*, 279 Mich App 291, 299; 761 NW2d 443 (2008). The inapplicability of MRE 608, which governs admission of evidence regarding a witness's character for truthfulness or untruthfulness, does not negate the trier of fact's role in assessing the credibility of the witnesses that appear before it. Contrary to the Association's argument, this case was not simply a matter of interpreting contractual language. Rather, plaintiff bore the burden of proof to demonstrate by a preponderance of the evidence that defendants were in delinquency and the extent of the delinquency. *Hannay v Dep't of Transp*, 497 Mich 45, 79; 860 NW2d 67 (2014) (explaining a plaintiff bears the burden to prove damages sought by a preponderance of the evidence). The trial court, in its role as the trier of fact, properly assessed the credibility of the witnesses before it in finding whether defendants made timely payments and whether Kramer-Triad's records were untrustworthy. Stated otherwise, the trial court needed to make factual determinations to assess whether certain provisions in the bylaws were triggered. The trial court could make these determinations without finding that Parker, Khan, or other witnesses had a character for truthfulness or untruthfulness.

Relatedly, the Association argues the trial court overlooked aspects of Parker's history that undermined his credibility, including that he failed to provide contact information to the Association, failed to timely correct violations and pay fines, and failed to comply with the bylaws pertaining to leasing of units. "An appellate court will give deference to the trial court's superior ability to judge the credibility of the witnesses who appeared before it." *Avery v State*, 345 Mich App 705, 716; 9 NW3d 115 (2023) (quotation marks and citation omitted). The trial court's credibility findings regarding Parker were not clearly erroneous. The trial court was aware of the entire record before it, including Parker's history. The trial court did not have to find Parker blameless in his dealings with plaintiff to find that he genuinely did not realize the problem with the accruing late fees.

With these determinations in mind, we turn to the Association's assertion that the trial court disregarded the plain language of the condominium bylaws and instead relied on irrelevant matters, such as Gucker's testimony regarding Kramer-Triad's "deceptive" practices; its opinion that Parker acted in good faith; and its opinion regarding plaintiff's practices. Plaintiff argues the outcome of the trial turned on two straightforward facts: that defendants were consistently delinquent in their accounts since 2012; and that defendants' payments were correctly allocated to unpaid late fees and assessments before they were applied to current assessments, as provided in the bylaws.

The trial court's statements regarding Kramer-Triad's "deceptive" practices lends credence to the Association's claim that the trial court disregarded the objective information contained in the records and chose instead to decide the matter subjectively on the basis of witnesses' testimony because the trial court disapproved of Kramer-Triad's business practices. Despite this, we cannot conclude that the trial court's findings were clearly erroneous. The trial court made findings consistent with its role as the fact-finder with respect to the believability of the records and witnesses at trial. See *Wright*, 279 Mich App at 299.

The court found that Khan's testimony, which detailed the Association's allegations of arrearages and violations from 2012 through 2020, was not "compelling." It found that Parker appeared conscientious, and therefore unlikely to slide into habitual neglect. Parker's conscientiousness was corroborated by his clean record with the Blue Heron units, which also were managed by Kramer-Triad. Although Parker's alleged tardiness was not a necessary factor to plaintiff's claim that he was continuously delinquent, Parker's testimony that Kramer-Triad was delayed in posting payments cast Kramer-Triad in a poor light, and called its accuracy into doubt. Kramer-Triad's accuracy was further impaired by its failure to present any evidence that it notified defendants of their delinquency for nearly ten years. Although the bylaws did not require notice to delinquent co-owners, the lack of corroborative evidence over so long a period is notable. The trial court ultimately concluded that the Association failed to present trustworthy evidence of its proposition that defendants were in continuous arrearages over a decade. Under these circumstances the trial court did not clearly err in finding that plaintiff's business records were untrustworthy and Khan's testimony was not compelling. Consequently, plaintiff did not meet its burden of proof by a preponderance of the evidence defendants were in delinquency and the extent of that delinquency.

We acknowledge the trial court could have properly concluded that defendants' delinquency justified foreclosure, or monetary damages, notwithstanding plaintiff's dilatory action. The trial court could have deemed the records trustworthy for proving defendants' history of unresolved arrearages. However, the evidence relied on by the trial court supported the trial court's ultimate decision, and the record does not establish that the trial court made a mistake. Given the deference that this Court afford the trial court's superior ability to judge the credibility of the witnesses that appear before it, we are not persuaded the trial court erred in finding no cause of action.[4]

## IV.  UNCLEAN HANDS

Defendants argue the trial court properly refused to enforce the Association's claim because plaintiff acted with unclean hands. The Association argues that defendants, not plaintiff, have unclean hands. We find no error in the trial court's implicit holding that plaintiff has unclean hands.

---

[4] Because we conclude the trial court did not err by determining that plaintiff failed to prove its entitlement to relief, we need not address plaintiff's argument that the trial court applied the wrong statute of limitations. The period of time for which plaintiff might have been granted relief is an irrelevant consideration.

We review de novo a trial court's decision to apply equitable doctrines. *New Prod Corp v Harbor Shores BHBT Land Dev, LLC,* 331 Mich App 614, 626; 953 NW2d 476 (2019). We review the trial court's factual findings supporting its decision for clear error. *Id.*

The trial court did not directly address this argument in its opinion, but it found "that under the standard of [*New Prod Corp,* 331 Mich App at 627], after return of the legal fees from Ms. Jordan, Mr. Parker is deemed current as of the date of trial on both units." This citation refers to this Court's discussion of the doctrines of laches, unclean hands, and equitable estoppel. Regarding unclean hands, this Court stated:

> The unclean-hands doctrine is "a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the [opposing party]." *Rose v Nat'l Auction Group*, 466 Mich 453, 463; 646 NW2d 455 (2002) (citations and quotation marks omitted). Any willful act that transgresses equitable standards of conduct is sufficient to allow a court to deny a party equitable relief. *Stachnik v Winkel*, 394 Mich 375, 386; 230 NW2d 529 (1975). [*New Prod Corp*, 331 Mich App at 627.]

The doctrine of unclean hands is an equitable defense that does not apply to an action for damages at law. *Stroud v Glover*, 120 Mich App 258, 261; 327 NW2d 462 (1982); see also *Waldorf v Zinberg*, 106 Mich App 159, 165; 307 NW2d 749 (1981).[5] Foreclosure, however, is an equitable remedy, and therefore subject to equitable defenses. *Mitchell v Dahlberg*, 215 Mich App 718, 724; 547 NW2d 74 (1996).

The evidence was sufficient to support the trial court's implied finding that plaintiff acted with unclean hands. Plaintiff allowed defendants' late fees and delinquency to increase for nine years without acting or notifying defendants. When plaintiff finally acted, by seeking the most drastic remedy of foreclosure, defendants were disadvantaged by the extent of their delinquency and the difficulty of producing evidence of their payment history. Furthermore, plaintiff's agent, Kramer-Triad, benefited financially from the repeating late fees that received priority when the payments were applied to the account.

## V. ATTORNEY FEES

The Association argues the trial court erroneously adopted defendants' argument that the bylaws did not allow plaintiff to recover attorney fees and costs. The Association also argues the trial court erred in ordering its counsel to refund to defendants payments that Parker made to plaintiff in early 2021. We disagree with the Association's first argument, but agree the trial court erred by ordering its counsel to refund payments to defendants.

In its first argument related to attorney fees, the Association argues attorney fees collected from the payments that Parker made in early 2021 were properly applied toward the attorney fees

---

[5] These cases are not strictly binding pursuant to MCR 7.215(J)(1) because they were issued before November 1, 1990.

plaintiff expended to bring Parker out of delinquency in accordance with their bylaws. The Association asserts the trial court erroneously adopted defendants' argument that the bylaws did not allow plaintiff to recover attorney fees.

A trial court's decision to grant or deny attorney fees pursuant to a contractual provision is reviewed for an abuse of discretion. *Mitchell*, 215 Mich App at 729.

The trial court concluded, "Having failed to prevail on their claim, Plaintiff is not entitled to attorney fees under the bylaws (Article 18 [Sic: 17], Section (1)(b) at Exhibit C[)]." This section states, in full:

> **Recovery of Costs.** In the event of a default of the Condominium Documents by a Co-owner and/or non-Co-owner resident or guest, the Association shall be entitled to recover from the Co-owner and/or non-Co-owner resident or guest, the pre-litigation costs and attorney fees incurred in obtaining their compliance with the Condominium Documents. In any proceeding arising because of an alleged default by any Co-owner, the Association, if successful, shall be entitled to recover the costs of the proceeding and such reasonable attorney fees, (not limited to statutory fees) as may be determined by the Court. Co-owner's rights to recover attorney fees shall be governed by Article 18, Section 4 of these Bylaws. The Association, if successful, shall also be entitled to recoup the costs and attorney's fees incurred in defending any claim, counterclaim or other matter from the Co-owner asserting the claim, counterclaim or other matter.

The trial court found that defendants were not liable for an arrearage. Accordingly, the payments should not have been allocated toward that arrearage, including any attorney fees associated with collecting the amounts due before litigation. Therefore, the Association's contractual right to collect attorney fees for pretrial proceedings was not triggered.

The Association next argues the trial court erred in ordering its counsel to refund to defendants payments that Parker made to plaintiff in early 2021. We agree.

The trial court ordered Attorney Brooke Jordan to refund a payment of $6,265 in legal fees to defendants. In issuing this order, the trial court further held, "This Court is not assessing treble damages as requested by Defendants." The trial court's order of the refund appears to be based on defendants' argument in their written closing argument that Attorney Jordan was personally liable to them on a claim of conversion.

"Under the common law, conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 497 Mich 337, 346; 871 NW2d 136 (2015) (quotation marks and citation omitted). Statutory conversion is governed by MCL 600.2919a(1)(a), which allows the plaintiff to recover treble damages if, in addition to the elements of common-law tort, the defendant converted the property to his own use. *Aroma Wines*, 497 Mich at 355-356.

Defendants did not assert a claim against plaintiff's counsel or a counterclaim against plaintiff for conversion. Plaintiff's counsel was not a party to this action. Defendants also did not prove that plaintiff's counsel received the funds. Accordingly, this part of the trial court's order

was erroneous. We therefore reverse the part of the order requiring payment from plaintiff's counsel.

## VI. THE TRIAL COURT'S STATEMENT REGARDING 48 MISSED PAYMENTS

Plaintiff argues that defendants falsely stated in their closing argument that plaintiff alleged that defendants missed 48 payments. Plaintiff further states that the trial court adopted this statement as factual and incorporated it into its written opinion. Although defendants misrepresented evidence, the trial court did not adopt this misrepresentation in its written opinion.

In their written closing arguments, defendants misrepresented evidence by taking plaintiff's figure of $19,395 in unpaid assessments, dividing it by the amount of the assessments, and concluding that this amount was the equivalent of 48 missed payments. Assuming defendants' arithmetic is correct, defendants did not misrepresent evidence in making this assertion about equivalence; however, defendants made an invalid inference that plaintiff was required to prove 48 missing payments. The Association never claimed that defendants failed to make 48 payments. Rather, the Association's claims of unpaid assessments were based on the accumulation of unpaid assessments and late fees.

The trial court did not adopt this misrepresentation. Instead, when the trial court referenced this statement in its opinion, it stated "Plaintiff claims an arrearage *that would total 48 missed payments*" (emphasis added). The conditional phrase, "that *would* total," does not mean that plaintiff alleged 48 missed payments. The court's next sentence stated, "Plaintiff was unable to produce a credible record at the time of trial to support *this*." The demonstrative pronoun "this" referred to the total amount of unpaid assessments, not a full omission of 48 payments. Plaintiff's argument regarding the trial court's "adoption" of defendants' written argument is therefore without merit.

## VII. DEFENDANTS' ISSUES ON CROSS-APPEAL

Defendants argue the trial court erred in denying their request for treble damages under MCL 600.2919a. We concluded in plaintiff's appeal that the trial court erred in awarding defendants damages for the alleged conversion. Accordingly, this issue is without merit.

Defendants argue the trial court erred in denying their request for attorney fees under MCL 600.2591. A trial court's decision whether to impose sanctions pursuant to MCL 600.2591 is reviewed for an abuse of discretion. *Fette v Peters Constr Co*, 310 Mich App 535, 549; 871 NW2d 877 (2015); *Ladd v Motor City Plastics Co*, 303 Mich App 83, 103; 842 NW2d 388 (2013). A trial court's factual findings are reviewed for clear error. *Fette*, 310 Mich App at 549.

MCL 600.2591(1) provides:

> Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

Under MCL 600.2591(3)(a), an action is frivolous if one of the following conditions is met:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.

The trial court's implicit finding that plaintiff's action was not frivolous is not clearly erroneous. Plaintiff established through its business records that defendants began to run an arrearage in 2012, which resulted in a portion of each subsequent payment being applied to past late fees and past shortfalls in accordance with the bylaws. Accordingly, plaintiff had a reasonable basis to believe that defendants had a long-running delinquency. Its claim therefore was not devoid of arguable legal merit. This was a close case, in which the trial court could have properly found that plaintiff's records were trustworthy and that defendants, regardless of their intentions, failed to comply with the bylaws and triggered plaintiff's right to seek relief. The trial court therefore did not err in denying defendants' request for sanctions.

Reversed and remanded with respect to the order for Attorney Brooke Jordan to refund payments to defendants. In all other respects, we affirm in both dockets. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ James Robert Redford
/s/ Sima G. Patel

-14-