*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WALDEN HILLS II CONDOMINIUM
ASSOCIATION, doing business as SUMMIT VIEW
CONDOMINIUM ASSOCIATION,

        Plaintiff/Counterdefendant-Appellee,

v

WALDEN HILLS CONDOMINIUM
ASSOCIATION,

        Defendant/Counterplaintiff/Third-
Party Plaintiff-Appellant,

v

RAMSHARD, LLC,

        Third-Party Defendant.

UNPUBLISHED
April 09, 2025
10:55 AM

No. 366707
Washtenaw Circuit Court
LC No. 21-001087-CK

Before: GADOLA, C.J., and K. F. KELLY and REDFORD, JJ.

PER CURIAM.

Defendant, Walden Hills Condominium Association, appeals by right the circuit court's opinion and order compelling arbitration pursuant to the parties' agreement. Defendant asserts that its agreement with plaintiff, Walden Hills II Condominium Association (Summit View), was not enforceable because the Walden Hills board of directors did not have approval from the majority of co-owners, as required by the master deed. We affirm.

## I. FACTS

The properties that constitute Walden Hills and Summit View were built in the 1960s as a single apartment complex in Ann Arbor. The property included recreational areas, which constituted a swimming pool, club house, and hand ball courts, collectively known as the community building, which is the source of the dispute now before this Court. The property was

-1-

eventually acquired by BWS Enterprises, which began converting the apartment units into condominiums. In 1981, the Walden Hills Condominium Association was established as a nonprofit corporation to manage the Walden Hills condos. The remaining units in the complex remained as rental apartments under the ownership of BWS until they were converted into condominiums as well.

The community building is located within the boundaries of the Walden Hills condominiums. In 1983, defendant entered into an Agreement for Use of Community Facilities (the agreement) with BWS. William J. Willits, president of the defendant association, signed the agreement on the association's behalf "by authority of its Board of Directors." The agreement provided that the condominium owners and apartment renters "shall have a right and easement of enjoyment in and to the Common Area [community building] which shall be appurtenant to and shall pass with the title to each Condominium Unit and Rental Phase…." The agreement delegated the association's obligation to maintain the community building to a new governing committee, consisting of persons appointed by Walden Hills and BWS, and included a cost-sharing structure. The agreement also contained an arbitration clause.

In 1985, defendant and BWS executed an amendment to the agreement, which (1) altered the proration of assessments for the community building, (2) altered the method by which the agreement could be terminated, and (3) gave each condominium association use of one business office in the community building. On the same day the amendment was executed, BWS assigned its interest in the agreement and amendment to Walden Hills Limited Partnership. Walden Hills Limited Partnership bought the remaining apartments in the unconverted complex, i.e., what would become the Summit View condominiums. In 1988, plaintiff was established as a nonprofit corporation to manage the Summit View condominiums, and Walden Hills Limited Partnership assigned its interest in the agreement and amendment to plaintiff.

Summit View and Walden Hills shared the community building with no issue for over 30 years. In 2020, a dispute arose among governing committee members about re-opening the community building following the Covid-19 pandemic. In 2021, defendant began to operate the community building on its own, claiming the 1983 agreement and the later amendment were invalid because they were not approved by a two-thirds vote of the condominium owners. Plaintiff asserts that defendant has unilaterally approved extensive renovations to the community building without any input from the plaintiff's representatives on the governing committee, while still demanding plaintiff pay its share of expenses, which plaintiff has continued to pay.

In October 2021, plaintiff filed a one-count complaint to compel arbitration pursuant to the agreement. Plaintiff filed an amended complaint which added Count II, declaratory relief, for defendant's violation of the Michigan Condominium Act and the Michigan Administrative Code, and Count III, money damages for breach of contract. Defendant filed a counter complaint and a motion for summary disposition pursuant to MCR 2.116(C)(10). Plaintiff also filed a motion for summary disposition pursuant to MCR 2.116(I)(2). The trial court denied both motions, finding a question of fact existed. On June 7, 2023, a bench trial was held in which both parties presented witness testimony and submitted exhibits. At the conclusion of the trial, the court granted plaintiff's request to compel arbitration and dismissed defendant's counter complaint. The trial court found the agreement was valid because the Walden Hills board of directors had the authority

to enter into the agreement without the approval of its co-owners because it did not constitute a material change to the co-owners' rights. Defendant now appeals.

## II. DISCUSSION

Defendant argues the trial court erred in finding the agreement and amendment were valid. Defendant contends that the agreement and subsequent amendment constituted an amendment of the master deed and bylaws because they materially changed the rights of the co-owners, and thus required a two-thirds vote for approval. We disagree.

## A. STANDARD OF REVIEW

"Questions of law relative to declaratory judgment actions are reviewed de novo, but the trial court's decision to grant or deny declaratory relief is reviewed for an abuse of discretion." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 376; 836 NW2d 257 (2013). An abuse of discretion occurs when the trial court chooses an outcome outside the range of principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

We review de novo questions of statutory interpretation and the interpretation of contracts. *Elizabeth Trace Condo Ass'n v American Global Enterprises, Inc*, 340 Mich App 435, 439; 986 NW2d 412 (2022). "Condominium-project documents, including master deeds, are to be interpreted and enforced like contracts." *Id*. "Accordingly, this Court begins by examining the language of the bylaws." *Tuscany Grove Ass'n v Peraino*, 311 Mich App 389, 393; 875 NW2d 234 (2015). "Words are interpreted according to their plain and ordinary meaning." *Id*. "Further, this Court avoids interpretations that would render any part of the document surplusage or nugatory, and instead this Court gives effect to every word, phrase, and clause," and clear and unambiguous language is enforced as written. *Id*.

## B. ANALYSIS

The trial court did not err in finding the Walden Hills board of directors, on behalf of the Walden Hills Condominium Association, had authority to enter into the agreement and subsequent amendment without approval of the co-owners. MCL 559.190(1) provides that condominium documents may be amended by the board of directors without the consent of the co-owners, so long as those amendments do not "materially alter or change the rights of a co-owner or mortgagee"; however, MCL 559.190(2) provides that an amendment to the condominium documents that does materially alter the rights of a co-owner or mortgagee requires approval from two-thirds of the co-owners.

"Arbitration is a matter of contract." *Altobelli v Hartmann*, 499 Mich 284, 295; 884 NW2d 537 (2016). "The general policy of this State is favorable to arbitration." *Id*. (citation omitted). But the court's primary task is to "ascertain the intent of the parties at the time they entered into the agreement[.]" *Id*. A party cannot be required to arbitrate an issue that it has not agreed to submit to arbitration. *Id*. And "[t]he burden is on the party seeking to avoid the agreement, not the party seeking to enforce the agreement." *Id*. (citation omitted). "In deciding the threshold question of whether a dispute is arbitrable, a reviewing court must avoid analyzing the substantive

merits of the dispute." *Id*. "If the dispute is arbitrable, 'the merits of the dispute are for the arbitrator.'" *Id*. (citation omitted).

As an initial matter, neither party presented evidence during these proceedings whether two-thirds of the Walden Hills co-owners approved the 1983 agreement. Similarly, neither party has established whether a majority of the governing committee approved the 1985 amendment.

The plain language of the 1983 agreement shows that it did not materially alter the rights of the co-owners. The master deed provides that all co-owners shall be members of the Walden Hills Condominium Association. The master deed broadly empowers the Walden Hills board of directors to act on behalf of the Walden Hills Condominium Association unless the authority is specifically reserved by the co-owners. The Walden Hills articles of incorporation assert that the association will operate pursuant to the terms of the master deed and the Walden Hills bylaws, and that it has the authority to enter into contracts to assist in the management, operation, and maintenance of Walden Hills. The bylaws provide that the board of directors shall be responsible specifically for the following: (1) "Management and administration of the affairs of and maintenance of the condominium project and the common elements thereof…; (5) To contract for and employ persons, firms, corporations, or other agents to assist in the management, operation, maintenance and administration of the condominium project." Nowhere in the master deed, articles of incorporation, or bylaws is there a prohibition of the board entering into an agreement with its adjoining condominium association—which enjoys an easement over the recreational areas—to share the administration, regulation, maintenance, and associated costs related to the recreational area though the creation of a governing committee.

Indeed, the 1983 agreement delegated the Walden Hills board of directors' authority to the governing committee for the purposes of carrying out the board's obligation to maintain the community building. Paragraph 10 of the master deed provides that residents of all units shall have the right to use the community building, thus granting an easement for those not in the Walden Hills portion of the complex. However, the easement is silent as to who will be responsible for operating the community building and determining what maintenance and repairs are needed. Therefore, the board entered into the 1983 agreement to create a governing committee, consisting of members from both Walden Hills and the rental units, i.e., what would become Summit View, to oversee the community building.

Plaintiff argues that the agreement's creation of a governing committee expands the easement from a right to use to a right to control the community building. However, paragraph 10 of the master deed provides that,

> In order to assure the co-owners of residential units in the first and all successive phases of Walden Hills of the right to utilize the recreational area, Developer reserves the right on behalf of itself, its successors and assigns as owners of the one hundred fifty-eight (158) multi-family residential units owned by it, its successors or assigns…to have access to and utilize said recreational area upon the payment of a porportionate [sic] share of the expenses of repair, maintenance, operation and replacement of said recreation area and the improvements thereon, to the Walden Hills Condominium Association, which share shall be determined by….

-4-

The paragraph goes on to provide a cost-sharing formula to calculate the share of expenses between the Walden Hills co-owners and the remaining apartment renters. If the developer's intent was to only provide the apartment renters, and eventually their successor Summit View co-owners, a right to use the building, and not a right to control the building, including a cost-sharing provision for repairs would not make sense. It is clear from this provision that the developer intended for the co-owners of Walden Hills and the renters to have both use and control of the shared community building, provided that they share the costs.

The agreement changed the cost-sharing provision in the master deed. As more of the apartments were converted to condominiums, the cost-sharing formula in the deed would have shifted the entire financial responsibility of the community building to the Walden Hills co-owners. The agreement established a method by which the co-owners of Walden Hills and the subsequent co-owners of Summit View, would continue to owe their share of the community building's expenses. This change in the cost-sharing formula was necessary to carry out the master deed's intent of having Walden Hills and Summit View share the rights and obligations of the community building, and thus did not materially alter the co-owners' rights. See MCL 559.190(1)

## III. TRIAL COURT'S DISMISSAL OF REMAINING CLAIMS

Defendant argues that the trial court erred when it dismissed its counter claims of declaratory judgment and breach of contract because it should still have an opportunity to present these matters in arbitration.

We review a trial court's decision to dismiss an action for an abuse of discretion. *Gueye v State Farm Mut Auto Ins Co*, 343 Mich App 473, 487; 997 NW2d 307 (2022). The dismissal of the counter complaint does not prevent defendant from raising those issues in arbitration. The trial court merely found that the arbitration provision was enforceable, meaning that this dispute had to be resolved in arbitration. It dismissed the remaining claims accordingly. The trial court did not err in this regard. Walden Hills may raise its counter claims for declaratory judgment and breach of contract in arbitration.

## IV. CONCLUSION

We find that the agreement did not materially alter the rights of the co-owners, and is therefore valid. We need not address the trial court's alternative reasoning that equitable estoppel or the doctrine of laches prevents defendant from asserting that the agreement is invalid. The remaining issues must be decided by an arbitrator pursuant to the agreement's arbitration clause.

Affirmed.

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ James Robert Redford